[No. S160736. Apr. 30, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
RINGO LAWRENCE, Defendant and Appellant.

COUNSEL

Robert S. Gerstein, under appointment by the Supreme Court, and Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels, Lauren E. Dana, Kristofer Jorstad and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WERDEGAR, J.**—When a criminal defendant who has waived his right to counsel and elected to represent himself under *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525] (*Faretta*) seeks, during trial, to revoke that waiver and have counsel appointed, the trial court must exercise its discretion under the totality of the circumstances, considering factors including the defendant's reasons for seeking to revoke the waiver, and the delay or disruption revocation is likely to cause the court, the jury, and other parties. (*People v. Gallego* (1990) 52 Cal.3d 115, 163–164 [276 Cal.Rptr. 679, 802 P.2d 169].) Here, the revocation request by defendant, who was being tried jointly with a codefendant, was not heard until after the jury had been selected and sworn and the prosecution's first witness had begun to testify. We hold that considering all the circumstances, especially defendant's failure to articulate a compelling reason for revoking his *Faretta* waiver and the likely delay and disruption that continuing a joint trial after the jury was empanelled would cause, the trial court did not abuse its discretion in denying the revocation request. We reverse the judgment of the Court of Appeal, which held the denial was an abuse of discretion and was prejudicial per se because it resulted in the complete denial of defendant's right to be represented by counsel.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of the offenses are not important to the issues we address here. In brief, a paid police informant testified at trial that he bought two rocks of

cocaine from defendant for $20 at a Los Angeles house. A police officer observed the transaction through binoculars, but was unable to see the actual exchange of money or drugs. When the police searched the house and its occupants shortly afterward, they found the $20 bill used to buy the cocaine in codefendant Patricia Broomfield's sock and found more rocks of cocaine in the house.

Defendant was charged with one count each of sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)) and possession of a controlled substance for sale (*id.*, § 11351.5). Similar charges were brought against Broomfield and John Evans.

Defendant was initially represented by court-appointed counsel, but during pretrial proceedings he substituted retained attorney Paul Cohen. When the case was called before Judge Wesley on the morning of Wednesday, September 28, 2005, the People and the two codefendants announced they were ready for trial, but Cohen, who had filed for a continuance, explained he was selecting a jury in "a six count attempt[ed] murder case" and would therefore not be ready for "about two weeks." Cohen informed the court defendant wished to represent himself, and defendant confirmed that desire.

The court told defendant it would expect him to be ready in two weeks, as Cohen would have been, but counsel for codefendant Broomfield, Joseph Walsh, observed that a two-week continuance "runs into my calendar. I have another case right after this. I am available for this two weeks." After a series of written and oral admonishments, defendant reaffirmed his desire to represent himself.[1] On his further statement that he was ready for trial, the court sent the case out for trial before Judge Mooney.

When the parties appeared before Judge Mooney later that morning, they discussed possible plea agreements. The court suggested defendant might wish to offer to plead guilty in exchange for a sentence of five years in prison, a deal the prosecutor (who had previously offered six years) said he would be willing to propose to his supervisors. Defendant, however, indicated he thought he should get diversion or probation, despite several charged prior convictions and despite his having been on conditional release at the time of his arrest. He also facetiously suggested that if he went to trial and won the court should give him $5 million "for wasting my time." In the afternoon, codefendant Evans made a negotiated plea and the court began jury selection for the joint trial of defendant and codefendant Broomfield.

---

[1] One of the advisements defendant initialed as part of his written *Faretta* waiver read: "I understand that depending on the stage of my case, if I ask to give up my pro per status and request counsel to handle my case, the Court may deny this request and I may have to proceed with trial without an attorney."

During jury selection on the afternoon of September 28, Broomfield's attorney, Walsh, brought to the court's attention that defendant had been asking him questions. Walsh added that on the basis of "informal" discussions with defendant, "I think he wants to withdraw his pro per status." Defendant responded: "The only reason is cross-examination. People are saying something and I am not for sure able to, you know." Addressing defendant, the court noted he had been "advised of all of these problems" before waiving his right to counsel, but continued, "We will see if we can contact your counsel."[2] Walsh pointed out that defendant's former attorney "is engaged in I believe an attempted murder trial and he will be for two weeks." The court admonished defendant not to "bother[]" Walsh with questions during the trial. Defendant said nothing more about revoking his in propria persona status, and jury selection continued with defendant representing himself.

On Thursday, September 29, jury selection was completed and the jurors and alternate jurors were sworn. There was no additional discussion on the record regarding appointment of counsel for defendant. Defendant neither raised the issue nor sought a ruling. Proceedings were adjourned until Monday, October 3.

On the morning of October 3, just after the court called for the jurors to enter, defendant told the court: "I talked to my wife and I need a state appointed lawyer or public defender. I am going to have to request a public defender and I am retiring my pro per on the record." The court responded that it would address that request at the next break. The court gave opening jury instructions, the prosecutor and both defendants presented opening statements, and the prosecution's first witness began his testimony.

At the first break in trial, the following discussion occurred:

"The Court: The record should reflect that the jurors have exited the courtroom.

"Just as our jurors were walking in, Mr. Lawrence had made the request to have an attorney appointed to represent him in this matter. And, Mr. Lawrence, I will give you a chance to be heard on that request.

---

[2] Whether Judge Mooney was referring to Cohen, defendant's former attorney, or to some other attorney appointed as standby counsel is unclear. In the clerk's minutes for September 28, 2005, after Judge Wesley granted defendant's motion for self-representation, appears the note: "The Bar panel is notified and stand by counsel is to report to Department 134," which was Judge Mooney's courtroom. When Walsh referred to defendant's having been given advisory counsel, Judge Mooney corrected him: "Stand-by counsel, not advisory counsel. And counsel did check in if there was a need for him and was on call. Another counsel will be on call, but there is a difference between stand-by counsel and advisory counsel."

"The Defendant: Yes, your Honor. I talked to my wife this weekend and she said I shouldn't be doing something. And it doesn't matter to me, but she figured I might get a public defender or state appointed attorney or someone.

"The Court: Well, Mr. Lawrence, the court—

"The Defendant: I haven't been to the law library or nothing either.

"The Court: The court has considered your request and I am going to deny your request at this time. This was something you were warned about when you got yourself into this, about you would be at a disadvantage choosing to represent yourself in this matter.

"I also consider the fact that, you know, the jury has been selected in this matter, that you also have a codefendant. And it would be disruptive to her case as well to have someone come in. Your previous attorney, Mr. Cohen, as I understand, is still engaged in trial and not available, so for all of those reasons I am going to deny your request.

"And I also note when you filled out this form you were specifically advised and you initialed here on paragraph H if you ask to give up your pro per status the court may deny the request and have you proceed to trial without an attorney and that is where we are now, sir."

Trial proceeded with defendant representing himself. Defendant was convicted of both offenses and sentenced to seven years in state prison. At sentencing, defendant was represented by retained attorney Denise McLaughlin-Bennett.

The Court of Appeal reversed. The appellate court held denial of defendant's request to revoke his counsel waiver was an abuse of discretion. Inconvenience to the jury, codefendant, and codefendant's counsel, the court reasoned, was an insufficient basis for denial given the early stage of trial, the legitimacy of defendant's reason for seeking appointment of counsel, and defendant's evident inability to represent himself effectively. The court further held the error had deprived defendant of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution, requiring reversal without any further showing of prejudice.

We granted the People's petition for review.

## DISCUSSION

In *People v. Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187], we explained that while a timely, unequivocal *Faretta* motion

invoked the nondiscretionary right to self-representation, a *midtrial* motion was "addressed to the sound discretion of the court." In *People v. Elliott* (1977) 70 Cal.App.3d 984 [139 Cal.Rptr. 205] (*Elliott*), the Court of Appeal concluded the same was true of a midtrial request to revoke in propria persona status and have counsel appointed. (*Id.* at p. 993.) Adapting the nonexclusive list of factors to consider mentioned in *Windham*, the *Elliott* court opined that a trial court should consider, along with any other relevant circumstances, "(1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney." (*Elliott*, at pp. 993–994.)

This court cited *Elliott*'s discretion framework favorably in *People v. Gallego, supra*, 52 Cal.3d at pages 163–164, adding, however, that ultimately the trial court's discretion is to be exercised on the totality of the circumstances, not strictly on the listed factors. Quoting *People v. Smith* (1980) 109 Cal.App.3d 476, 484 [167 Cal.Rptr. 303], we explained: " 'While the consideration of these criteria [listed in *Elliott*] is obviously relevant and helpful to a trial court in resolving the issue, they are not absolutes, and in the final analysis it is the totality of the facts and circumstances which the trial court must consider in exercising its discretion as to whether or not to permit a defendant to again change his mind regarding representation in midtrial.' " (*Gallego*, at p. 164.) We found no abuse of discretion in the trial court's denial of the *Faretta* revocation request, in light of the defendant's history of counsel change requests, the advanced stage of trial (late in the guilt phase of a capital trial), and the trial court's inability to find an attorney who would take over at that stage without the need to declare a mistrial. (*Gallego*, at pp. 164–165; see also *People v. Lawley* (2002) 27 Cal.4th 102, 148–151 [115 Cal.Rptr.2d 614, 38 P.3d 461] [no abuse of discretion in denial of revocation request at the start of the penalty phase: request appeared to be an attempt at delay].)[3]

---

[3] Courts of Appeal have found no abuse of discretion in *People v. Smith, supra*, 109 Cal.App.3d at pages 483–486 (request made after presentation of People's case, necessary two-week continuance would have inconvenienced witnesses, and record suggested the defendant was trying to create an issue for appeal), and *People v. Smith* (1980) 112 Cal.App.3d 37, 48–51 [169 Cal.Rptr. 108] (request made on third day of trial would have required a substantial delay and would have greatly inconvenienced witnesses). They have found abuses of discretion in *Elliott, supra*, 70 Cal.App.3d at pages 994–998 (request made before presentation of evidence began, prompted by prosecutor's offer of proof regarding an uncharged offense, and no showing was made that the necessary continuance would disrupt the court's calendar or prejudice the prosecution); *People v. Cruz* (1978) 83 Cal.App.3d 308, 319–322 [147 Cal.Rptr. 740] (request made before assignment to trial department; no showing

After considering the totality of the circumstances surrounding defendant's revocation request, we conclude the trial court did not abuse its discretion in denying the request.

We note first that defendant's remark on September 28, that he was having trouble with "cross-examination," did not amount to an unequivocal request to revoke his in propria persona status. (Cf. *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002 [47 Cal.Rptr.3d 467, 140 P.3d 775] ["*Faretta* motions must be both timely and unequivocal. Otherwise, defendants could plant reversible error in the record."].) On that occasion, during jury selection, codefendant's attorney, Walsh, raised the issue by telling the court defendant had been asking him questions regarding procedures and "just *informal conversations* with Mr. Lawrence he has a request now that he wishes the court—I *think* he wants to withdraw his pro per status." (Italics added.) Defendant responded: "The only reason is cross-examination. People are saying something and I am not for sure able to, you know." As appellate counsel acknowledged at oral argument in this court, defendant's remark was ambiguous. It may have meant, "The only reason I am now requesting reappointment of counsel is cross-examination," or it may have meant, "The only reason I was asking Mr. Walsh what to do, and am entertaining the idea of having counsel reappointed, is cross-examination." The record reflects no other comments on the topic by defendant until October 3, when he did unequivocally request revocation.

To the extent the trial court took the September 28 exchange as a request, the reporter's transcript reflects the court intended to accommodate defendant if possible, rather than to deny the request, for the court (after taking defendant briefly to task for changing his mind) said, "We will see if we can contact your counsel." Walsh informed the court that defendant's prior counsel (Cohen) was in another trial, but after that the court and parties had no additional discussion of the putative request on the record. There is thus no record of whether the court did try to reach prior counsel Cohen or the attorney, alluded to but unnamed in the record, who had been appointed as standby counsel, much less whether either attorney was actually contacted or what, if anything, either told the court regarding his or her availability.

This record does not establish an abuse of discretion. The trial court was faced with a defendant ambivalent about his in propria persona status, who earlier the same morning had executed a valid waiver of counsel, insisting he

---

of disruption from continuance needed); *People v. Hill* (1983) 148 Cal.App.3d 744, 760–761 [196 Cal.Rptr. 382] (request made before jury selection; no showing of disruption from the five-day continuance prior counsel needed to be ready); and *People v. Ngaue* (1991) 229 Cal.App.3d 1115, 1122–1126 [280 Cal.Rptr. 757] (request made after trial, for purposes of sentencing and new trial motion).

had "no choice" but to dismiss Cohen because he "ain't doing nothing." The court was not required, simply because defendant indicated he was having trouble cross-examining prospective jurors, to suspend jury selection and other trial proceedings until it could be determined whether defendant truly wanted to revoke his waiver of counsel, whether he was willing to accept Cohen again, or whether another attorney could be located, and when either attorney could begin trial. The court did not abuse its discretion in allowing proceedings to continue while the availability of counsel was explored. Defendant, if he did not want to proceed without counsel, should have made an express request to revoke his waiver and pressed for a final ruling at some point during jury selection. The record thus provides an insufficient basis for us to conclude that defendant made a request to revoke his in propria persona status, that the trial court denied it, or that the circumstances rendered any denial an abuse of discretion.[4]

On October 3, when defendant did make an unequivocal request to revoke his *Faretta* waiver, the jury had been sworn and the court, jury, prosecutor, codefendant's attorney, and witnesses were ready to start the trial. By the time of the first recess, when the court could hear defendant's request, the court had given its opening jury instructions, defendant and the other parties' attorneys had made opening statements, and the prosecution's first witness had begun his testimony. Attorney Cohen, who had previously represented defendant, was in another trial and would not be available for about two weeks. To grant defendant's request at that point would have required a lengthy continuance. Keeping the jury together for that time would have been difficult at best and would likely have resulted in significant inconvenience to the jurors.

The trial court, in denying the request, noted the disruption it would cause in codefendant Broomfield's case. This was indeed significant. Broomfield's

---

[4] That the clerk's minutes for September 28 state defendant's request was denied does not alter our conclusion. "As a general rule, a record that is in conflict will be harmonized if possible. (*People v. Smith* (1983) 33 Cal.3d 596, 599 [189 Cal.Rptr. 862, 659 P.2d 1152].) If it cannot be harmonized, whether one portion of the record should prevail as against contrary statements in another portion of the record will depend on the circumstances of each particular case." (*People v. Harrison* (2005) 35 Cal.4th 208, 226 [25 Cal.Rptr.3d 224, 106 P.3d 895].) We could harmonize the reporter's and clerk's transcripts here only by speculating that the trial court instructed the clerk at some point *after* the reported discussion to note defendant's request was denied. This is conceivable—the court may have investigated counsel's availability and concluded the request should be denied—but it would not support a finding of abuse of discretion, as the detailed circumstances that led to the court's conclusion would be unknown. Speculation aside, we do not consider the clerk's minutes determinative as a record of what happened in the reported discussion on September 28. Neither whether defendant's remarks amounted to a cognizable request for reappointment of counsel nor whether the trial court's actions amounted to a denial is a matter the clerk can determine contrary to the reporter's transcript.

attorney, Walsh, had another trial starting in two weeks; he was unlikely to agree to recommend that Broomfield consent to a mistrial and continuance. But to dismiss the jury and declare a mistrial without Broomfield's consent would have precluded a later trial, as she had already been placed in jeopardy. The third alternative, severing the two cases and proceeding immediately with Broomfield's, would have resulted in the wasteful duplication of holding two trials involving many of the same events and witnesses. The Court of Appeal was thus mistaken in its belief that no significant disruption or untoward delay would have been threatened if defendant's request had been granted and a continuance or mistrial ordered to permit new counsel to prepare a defense.

■ Against this potential for serious disruption to the trial and to the administration of justice, the court balanced the reason for defendant's request. Notable here was the lack of either definiteness or urgency in defendant's reasons. Although during jury selection defendant had indicated he was unsure how to cross-examine the prospective jurors, at the time of his request to revoke he said only that his wife had told him he "shouldn't be doing something" and, while it did not "matter" to defendant, his wife thought he should get an attorney. But as the trial court noted, defendant had been extensively warned when he chose to represent himself about the difficulties self-representation would entail. Nothing new or unforeseeable had occurred in the interim; rather, over the weekend his wife evidently had expressed concern that representing himself would be more difficult than he had anticipated and suggested he reverse his decision. Buyer's remorse may not be an illegitimate reason for wanting to revoke a *Faretta* waiver, but neither is it a compelling one.

■ Defendant argues the trial court's references to the fact he had been fully advised before choosing self-representation show the court took an improper "assumption of the risk" approach to the revocation request. We disagree. That defendant was told of—and affirmed his understanding of—the risks and disadvantages of self-representation before he waived counsel reflected on his reasons for later seeking to revoke the waiver. The colloquy tended to show not that he had suddenly learned he would be at a disadvantage in the trial, but that with additional input from his wife he had simply reweighed the pros and cons of self-representation and changed his mind as to the best course. That a defendant's motion to waive counsel was *incorrectly* handled has been held to weigh in favor of allowing revocation of the waiver. (See *People v. Hill, supra*, 148 Cal.App.3d at pp. 761–762 [trial court's errors in addressing the defendant's previous motions for substitution of counsel and self-representation led to error in denying his request to revoke his counsel waiver].) Here, there was no mishandling. Because defendant had been fully advised before he chose self-representation, his later

change of mind properly bore less weight in the trial court's discretionary decision on the revocation request.

■ The trial court also erred, defendant contends, in failing to consider on the record two additional factors mentioned in *Elliott, supra*, 70 Cal.App.3d 984: defendant's history regarding assertion of the right to counsel, and the likelihood he would effectively represent himself. The record, defendant further argues, shows he was consistent (except for his single *Faretta* motion) in wanting representation, and he was clearly unable to competently represent himself at trial. But we do not agree with either of the argument's premises that the trial court must review on the record each factor mentioned in *Elliott* or that any one factor is necessarily determinative. The standard is whether the court's decision was an abuse of its discretion under the totality of the circumstances (*People v. Gallego, supra*, 52 Cal.3d at p. 164), not whether the court correctly listed factors or whether any one factor should have been weighed more heavily in the balance.

While a defendant's proclivity to seek changes in counsel status will generally weigh against finding an abuse of discretion, for example, "the fact that a defendant has no such history does not preclude the court from denying the request if other factors [militate] against it." (*People v. Smith, supra*, 109 Cal.App.3d at p. 484.) As far as the record shows, defendant was not trying to manipulate the system or create an issue for appeal in making his request to revoke in propria persona status. Nevertheless, he had no compelling reason to do so, and granting his request would likely have caused serious disruption to the administration of justice, considerations strongly supporting denial.

Similarly, defendant's asserted ineffectiveness at self-representation does not demonstrate an abuse of discretion. Defendant was untrained in the law and may not have been especially experienced in court procedures, but the same could be said of many, if not most, in propria persona criminal defendants. That defendant's defense would have been more effectively presented (or a better sentence obtained through a negotiated plea) had he been represented is likely. But if that fact were determinative, virtually all self-representing defendants would have the right to revoke their counsel waivers at any time during trial. That is not the law. (*People v. Lawley, supra*, 27 Cal.4th at p. 149; *People v. Gallego, supra*, 52 Cal.3d at p. 164.)

Considering all the circumstances before the trial court, we conclude the court did not abuse its discretion in denying defendant's midtrial request to revoke his *Faretta* waiver. Accordingly, we need not decide whether an error in denying the request would have deprived defendant of his constitutional right to representation by counsel or whether such a deprivation would require reversal without consideration of prejudice.

▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J.,** Dissenting.—While in custody and facing trial on felony drug charges, defendant Ringo Lawrence gave up his constitutional right to counsel and began representing himself. (See *Faretta v. California* (1975) 422 U.S. 806, 819 [45 L.Ed.2d 562, 95 S.Ct. 2525].) That same day, during jury selection, defendant sought to withdraw his waiver of counsel after he realized he lacked the skills to question prospective jurors. The trial court denied the motion. Four days later, defendant again made this request, and the trial court again denied it, noting that the jury had been sworn and had heard part of the testimony of the first prosecution witness.

Defendant was convicted and sentenced to seven years in state prison. The Court of Appeal reversed defendant's conviction because in its view the trial court had deprived defendant of his constitutional right to counsel. The majority reverses the Court of Appeal. I disagree and would affirm that court's judgment.

I

In mid-May 2005, a paid police informant bought two grams of cocaine base at a house in South Central Los Angeles. Two weeks later, on June 1, a second informant made another controlled buy of cocaine base at the same house. An undercover officer watching the June 1 transaction saw the informant talk to defendant and saw defendant enter and then leave the enclosed front porch of the house, but the officer did not see the two men exchange either money or drugs.

After the June 1 transaction, police officers went to the house, where they arrested defendant and a woman, Patricia Broomfield, who was found to have $227 in cash, including a "marked" $20 bill that the police had given to the second informant. Both defendant and Broomfield were charged with felony narcotics offenses.

On Wednesday morning, September 28, 2005, defendant's attorney, Paul J. Cohen, appeared in the master calendar court on defendant's behalf. (Defendant had previously been represented by a deputy public defender.) Because Attorney Cohen was about to begin trial in another case, he asked the court for a two-week continuance. He mentioned that defendant, who was in

custody and not present in court, might want to represent himself. When defendant was brought into court, he confirmed his desire to "take over" his case.

The trial court said it would grant the two-week continuance that Attorney Cohen had requested, and it told defendant that if he was going to represent himself, he too would "be expected to be ready in two weeks." Defendant protested that he had been in custody on this case for four months and "all you can give me" to prepare the case "is two weeks."

After warning defendant of the pitfalls of self-representation, the trial court asked defendant to fill out a "waiver of counsel" form. When the prosecutor mentioned that he would be out of town on October 13 and 14, the court replied that it would schedule the trial for October 17.

At that point, Attorney Joseph Walsh, representing codefendant Broomfield, interjected that he did not think defendant "was asking for a continuance" but was "just asking to represent himself." The trial judge responded that if defendant wanted to go to trial that day, "I will send it out" for trial.

The trial court then looked at the "waiver of counsel" form filled out by defendant, and noted that defendant had not listed the charged crimes. When the court asked defendant whether he knew what the charges were, defendant made no response. The court told defendant that he was charged with the sale of cocaine base (Health & Saf. Code, § 11352, subd. (a)) and with possession for sale of cocaine base (*id.*, § 11351.5), and it asked if defendant understood the charges. When defendant replied that he did, the court said that it would "fill in that section on here indicating the charges," and that defendant should initial the boxes acknowledging his understanding of the charges.

The following colloquy then took place:

The court: "You have had an opportunity to think about this, is it still your desire to represent yourself?"

Defendant: "Yes, Sir. I have no choice."

The court: "You have a choice; you can wait for Mr. Cohen."

Defendant: "I had a lawyer before, they ain't doing nothing."

The court: "Is it still your desire to represent yourself?"

Defendant: "Yes, Sir."

The court: "Are you ready for trial?"

Defendant: "Yes, Sir."

The trial court relieved Attorney Cohen from further representation, and it transferred the matter to department 134 "for trial forthwith." That afternoon, defendant's case was called for trial in department 134. With defendant representing himself and Attorney Walsh representing codefendant Broomfield, the court began jury selection. Shortly thereafter, the court excused the jury panel for the day.

Attorney Walsh told the trial court that he had a matter to bring to the court's attention: He mentioned that once the trial started, defendant, who "was unfamiliar with the proceedings," kept asking questions of Attorney Walsh about jury selection, and Walsh had been "answering [defendant's] questions essentially." Walsh and the trial court then discussed whether the master calendar judge had appointed advisory or standby counsel for defendant. The court noted that the minute order reflected the appointment of standby counsel.

Attorney Walsh then said that, based on "informal conversations" with defendant, "I think he wants to withdraw his pro per status." Defendant replied: "The only reason is cross-examination. People are saying something and I am not for sure able to, you know."

The trial court admonished defendant not to be "bothering Mr. Walsh [codefendant Broomfield's attorney] during the trial." After observing that defendant had "filled out a pro per waiver form" and that defendant understood "what [he] would be up against" in representing himself, the court announced it was in recess on this case until the next morning. The clerk's transcript for the day has this notation: "Defendant's request to have counsel appointed is denied."

The next day, Thursday, September 29, 2005, jury selection was completed, and the trial court swore in the jury, after which it put the case over for four days, until Monday, October 3. That Monday, as soon as defendant's case was called for trial, defendant told the trial court: "I talked to my wife and I need a state appointed lawyer or public defender. I am going to have to request a public defender and I am retiring my pro per on the record. On the record." The trial court put that matter over until "the next break," and had the prosecution call its first witness.

Just before the noon recess, the trial court took up defendant's request for counsel. Defendant explained: "I talked to my wife this weekend and she said

I shouldn't be doing something. And it doesn't matter to me, but she figured I might get a public defender or state appointed attorney or someone." Defendant added that he had not "been to the law library or nothing either."

The trial court denied the request for counsel, giving these reasons: Defendant had been "warned" of the "disadvantage" of choosing to represent himself; the jury had already been selected; "it would be disruptive" to codefendant Broomfield's case to now appoint counsel for defendant; and defendant's former counsel, Attorney Cohen, was likely "still engaged in trial and not available."

Defendant, representing himself at trial, was found guilty as charged and sentenced to seven years in state prison. Defendant appealed. The Court of Appeal held that the trial court abused its discretion in denying defendant's request to withdraw his waiver of counsel and to appoint counsel for defendant, and that this error required a reversal of the judgment. This court granted defendant's petition for review.

## II

Under the Sixth and Fourteenth Amendments to the federal Constitution, a defendant in a criminal case has a right to representation by counsel as well as the right of self-representation. (*Faretta v. California, supra,* 422 U.S. 806, 819.) But once a defendant knowingly and voluntarily waives the constitutionally guaranteed right to counsel, that right is no longer absolute. (*Menefield v. Borg* (9th Cir. 1989) 881 F.2d 696, 700; *People v. Gallego* (1990) 52 Cal.3d 115, 163–164 [276 Cal.Rptr. 679, 802 P.2d 169].)

There are many reasons why a defendant may choose to give up the right to counsel in favor of self-representation. In the words of the federal appeals court in *Menefield v. Borg, supra,* 881 F.2d at page 700: "A criminal defendant may initially assert his right to self-representation for reasons that later prove unsound. [He] may doubt the willingness of an appointed attorney to represent his interests. More often, [he] may have a baseless faith in his ability to mount an effective defense. The lure of self-representation may, however, exact a significant price; lost at trial, the defendant may miss important opportunities and even create gaping holes in his own case." (Fn. omitted.)

Here, defendant asked to represent himself because he had already spent four months in jail awaiting trial and, as he saw it, his attorneys (first the deputy public defender and then Attorney Cohen) had done "nothing" to bring his case to trial. But almost immediately after giving up his right to

counsel, defendant realized he was not up to the task of representing himself, and he asked to withdraw his waiver of counsel.

At least two states allow defendants to withdraw their waivers of the right to counsel and to obtain new counsel "at any time." (*Ex parte King* (Ala. 2001) 797 So.2d 1191, 1193, italics omitted [discussing Ala. Rules Crim. Proc., rule 6.1(c)]; *State v. Rickman* (1986) 148 Ariz. 499 [715 P.2d 752, 756] [discussing Ariz. Rules Crim. Proc., rule 6.1(e)].) But California has no such rule. In this state, when a defendant has exercised the right to self-representation, a trial court has broad discretion either to grant or to deny the defendant's later request to abandon self-representation and to obtain counsel. (See *People v. Gallego, supra,* 52 Cal.3d 115, 164–165; *People v. Elliott* (1977) 70 Cal.App.3d 984, 994 [139 Cal.Rptr. 205].) The Court of Appeal in *Elliott* listed some things that a trial court should consider when ruling on such a motion: (1) whether the defendant has a prior history of changing back and forth between representation by counsel and self-representation; (2) the reasons for requesting to withdraw a waiver of counsel; (3) the stage of the proceedings; (4) the possibility of disruption or delay in the proceedings; and (5) whether the defendant is likely to be effective in representing himself. (*Elliott, supra,* 70 Cal.App.3d at pp. 993–994.) This court in *Gallego* found these considerations helpful, but it ultimately concluded that what the trial court should evaluate was the totality of circumstances surrounding the motion at issue. (*Gallego, supra,* 52 Cal.3d at pp. 164–165.)

According to the majority, consideration of the "totality of circumstances" in this case supports the trial court's denial of defendant's requests that he be allowed to abandon his self-representation and that he be given appointed counsel. The majority notes that when the trial court addressed the matter on Monday, October 3, the jury had already been sworn and the prosecution's first witness had started to testify. The swearing of the jury was particularly significant, the majority states, because to reappoint counsel for defendant would have required dismissal of the jury, thus preventing the prosecution from trying codefendant Broomfield who, having "already been placed in jeopardy," would be unlikely to agree to a mistrial. (Maj. opn., *ante,* at p. 195.)

The critical date, however, was not Monday, October 3, after the jury had already been sworn and testimony begun. The critical event occurred four days earlier, Wednesday, September 28, when Attorney Walsh (who represented codefendant Broomfield) told the trial court that defendant no longer wanted to represent himself, a fact that defendant, who was present, confirmed. At that time, the jury had not been sworn. Thus, the trial court could simply have excused the prospective jurors, reappointed Attorney Cohen to represent defendant, and put the case over until October 17, the date that just

hours earlier the master calendar judge had selected as the date on which defendant's case was to go to trial. Moreover, to allow defendant to withdraw his counsel waiver and to reappoint counsel on September 28 would have posed no double jeopardy bar to the prosecution of codefendant Broomfield, because jeopardy does not attach until the jury is sworn. (*People v. Riggs* (2008) 44 Cal.4th 248, 279, fn. 12 [79 Cal.Rptr.3d 648, 187 P.3d 363]; *People v. Smith* (1983) 33 Cal.3d 596, 600 [189 Cal.Rptr. 862, 659 P.2d 1152].) Here, that did not take place until the next day, Thursday, September 29.

Also supporting my conclusion that the trial court abused its discretion in denying defendant's request at issue are these considerations: Defendant had no prior history of alternating between self-representation and representation by counsel; the reason he gave for wanting counsel was a valid one—he realized that he lacked the necessary skills to represent himself in the proceeding; his request was made on the same day the case was sent out for trial, early on in jury selection, and before anything of significance had happened in the case; little disruption or delay might reasonably be expected to ensue from granting the motion, other than the possible need for the two-week continuance the master calendar judge had already been ready to grant; and defendant's inability to understand the jury selection process indicated that he was unlikely to be effective in defending against the criminal charges. (See *People v. Elliott, supra,* 70 Cal.App.3d at p. 994.) Surely, these considerations are relevant in determining whether under the totality of circumstances the trial court abused its discretion, as I conclude it did, in making defendant go to trial without a lawyer.

Even though the clerk's transcript of the September 28, 2005, afternoon proceeding shows that the trial court "denied" defendant's "request to have counsel appointed," the majority concludes that this record notation cannot be "harmonize[d]" with the reporter's transcript, which includes no express comment by the trial court indicating a denial of defendant's motion, and that therefore, in the majority's view, no such motion was made that day. (Maj. opn., *ante*, at p. 194, fn. 4.)

The majority is wrong. A fair reading of the September 28 transcript shows that Attorney Walsh (who represented codefendant Broomfield) advised the trial court that defendant wanted to "withdraw his pro per status," a fact that defendant immediately confirmed by explaining that he did not know how to "cross-examine" prospective jurors. The trial court's awareness of defendant's desire to have counsel represent him is clear from its statement in court that defendant had chosen self-representation when he "filled out a pro per waiver" and understood "what [he'd] be up against." It necessarily rejected defendant's request when, without further inquiry, it recessed the case for the

day. I also note that the trial court's denial of defendant's request for counsel was duly recorded in the court's minutes. To summarize, unlike the majority, I see no inconsistency between the reporter's and clerk's transcripts.

A denial of a criminal defendant's right to counsel affects "the framework within which the trial proceeds" and thus it is not "simply an error in the trial process itself." (*Arizona v. Fulminante* (1991) 499 U.S. 279, 310 [113 L.Ed.2d 302, 111 S.Ct. 1246].) Accordingly, I agree with the Court of Appeal that in this case the trial court's denial of the right to counsel requires automatic reversal.