Filed 12/9/21  P. v. Surrell CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090151 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE011674) |
| v. | |
| ALVON SHONER SURRELL, | |
| Defendant and Appellant. | |

After numerous prior attorneys for defendant were replaced, Alvon Shoner Surrell made a motion under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) to represent himself.  On the first day of trial, defendant asked the trial court to reappoint counsel. The trial court denied the request.  Defendant represented himself at trial and the jury found him guilty of four robberies (Pen. Code, § 211),[1] and found true a firearm

---

[1] Undesignated statutory references are to the Penal Code.

1

enhancement as to each robbery (§ 12022.53, subd. (b)). On appeal, defendant contends the trial court abused its discretion by denying his untimely request for reappointment of counsel.[2] We affirm.

## I. BACKGROUND

The substantive facts underlying defendant's convictions are not recounted, as they are not relevant to the disposition on appeal.

On January 30, 2018, defendant was arraigned on two cases alleging a total of four robberies, accompanying firearm enhancements, and prior strike convictions. Public defender Allison Williams represented defendant at the arraignment.

Approximately one month later, defendant made a *Marsden*[3] motion to relieve his appointed counsel. Ashley Burg was the public defender assigned to represent defendant after his case proceeded past arraignment and was his attorney when defendant made the *Marsden* motion. Defendant alleged that public defender Williams had continued the matter at the arraignment, against his wishes, as he had wanted to plead, go to preliminary hearing, and exercise his right to a speedy trial. He also stated that public defender Burg could have tried to contact him in the period when the matter was continued and inform him of what was happening in his case. Burg noted the seriousness of the charges defendant faced, the magnitude of discovery yet to be received, and defendant's potential three strikes sentencing exposure. Given these circumstances, she did not believe anyone in the public defender's office would have advised defendant to proceed to set the case for preliminary hearing at the first court appearance. She also indicated she had not met with defendant, as he had refused to meet with her. Defendant

---

[2] Defendant filed his notice of appeal on August 8, 2019. Due to delays in the preparation of the record, including augmentations of the record, and multiple extensions to the briefing schedule this case was not fully briefed until August 18, 2021.

[3] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

confirmed he had refused to meet with Burg, because once he had made up his mind that he did not need "present counsel" to be part of the case, he did not feel compelled to meet with her. The trial court denied the motion.

On March 6, 2018, defendant pled not guilty. He was advised he faced a maximum exposure of 40 years, plus 100 years to life. Following a preliminary hearing, defendant was held to answer on a consolidated complaint alleging he committed four counts of robbery, personally used a firearm in each, and had two prior strike convictions. The court deemed the consolidated complaint an information. Defendant again entered pleas of not guilty.

On June 25, 2018, defendant's public defender, Melissa McElheney, declared a conflict, apparently based on the prior *Marsden* proceedings and defendant's claims of misconduct by the public defender's office. The court relieved the public defender's office as counsel and appointed conflict counsel.

One month later, defendant's new appointed counsel, Alan Donato, advised the court he had put the matter on calendar, as defendant wanted to represent himself. Defendant wanted to represent himself because Donato refused to file motions defendant wanted him to file, which Donato had concluded were without merit. The hearing on the motion was continued to permit defendant and his attorney to complete the waiver forms. At the August 6, 2018 *Faretta* hearing, defendant was explicitly advised of his exposure to four 25 year to life terms, plus 40 years as a result of the firearm enhancement allegations. Defendant indicated he understood the potential sentence. Defendant also indicated he understood his right to an attorney, a speedy trial by jury, to subpoena witnesses and records, confront and cross-examine witnesses, against self-incrimination, and to self-representation. He indicated he was not a high school graduate, but he had obtained a GED and worked as a real estate consultant. He was advised of, and acknowledged, the dangers and disadvantages of self-representation, including that without an attorney, he would be required to: (1) follow the technical rules of substantive

3

law, procedure, evidence, and courtroom protocol without the assistance of a lawyer; and (2) conduct his own trial, including making motions, selecting a jury, cross-examining witnesses, presenting and examining his own witnesses, making appropriate objections and motions, preparing jury instructions, and making post-trial motions. In addition, he would not receive assistance from the court and because of his custodial status, it would be difficult to contact witnesses, investigate his case, and he would have limited access to the telephone and law library. The court advised him he was going to be facing "an incredibly experienced prosecutor." He was also advised a subsequent motion to give up his pro per status might be denied and he would still have to proceed without an attorney, and that he had no right to standby or advisory counsel. The court recommended defendant not represent himself and, instead, accept court-appointed counsel. Defendant stated he understood all of the advisements, and defendant still wanted to represent himself.

After inquiring into defendant's legal background, training, and knowledge, the court found defendant had the ability to act as his own attorney; and, had knowingly, intelligently, and voluntarily chosen to act as his own attorney, with full knowledge of the risks and dangers of doing so. Accordingly, the court granted his *Faretta* motion and relieved appointed counsel.

In the ensuing nine months, defendant filed numerous motions, including a motion to dismiss. The trial court denied these motions. Trial was originally set for September 27, 2018, and was continued as a result of defendant's motions. The trial date was reset to November 14, 2018, and was continued to January 24, 2019, because of defendant's motions. On January 24, 2019, defendant's motion to continue was granted. Trial was reset for March 25, 2019. On March 25, 2019, the Sheriff's Department advised the court that defendant refused to be transported from jail to court. Trial was reset to April 24, 2019. Defendant again refused to be transported to court. Trial was then set for May 9, 2019.

On May 9, 2019, defendant made an oral motion to disqualify the judge under section 170.6 and a challenge for cause. The court denied these motions. As the discussions proceeded as to how trial would be conducted, including examination of witnesses and motions in limine, defendant asked the court if it was "too late for me to request counsel because this—at this point, it is a little intimidating. There's a lot to remember. There are a lot of rules that need to be attended to. I want to give myself my best defense. I want to be able to do that. I believe I'm entitled to and I expect it even for myself. So I think that is a fair question for me to ask. Whether it's too late or not, I don't know." He went on to state he had sought self-representation as he did not think he could get a fair trial with the available representation; "However, like I said—like the D.A. just said, this is a life case and it's extremely technical, and it is, if I could be honest intimidating to have so much riding on every single detail that is going to be played out over the next two, three, four days." The court asked the prosecutor for her thoughts, noting that reappointing counsel would require a delay. The prosecutor objected. She noted the crimes occurred in 2016, so were three years old. There were four victim witnesses and several other civilian witnesses who had been waiting to testify for quite some time and were prepared to testify, and the matter was set to go to trial. She also argued defendant had been represented by three different public defenders and conflict counsel, and he had been conducting his own defense for months. Defendant summed up the reasons for his request, stating: "I learned enough about the law to find out that at this point I may be in over my head. The severity of the case requires a little more than I can offer. My hands are tied in terms of just my ability to access the law library, my ability to research materials, my ability to try to catch up to speed. [The D.A.] is qualified. . . . So I understand what I'm up against, and that is the reason why I ask for an attorney at this point."

The court noted that previously defendant had, and replaced, four attorneys and experienced significant conflicts with each. The court had no confidence that if it

5

appointed another attorney, defendant would have a cooperative relationship with that attorney. Rather, the court expected there would be more problems and defendant would again request to substitute counsel or represent himself. The court also considered that the case was three years old, and the People also had a right to trial in a timely manner. The motion was made on the day set for trial, late in the proceedings, after defendant had brought many motions, and the matter had been continued several times. Defendant had repeatedly stated he was ready for trial. Accordingly, based on the totality of the circumstances, the court denied the motion.

Following trial, the jury found defendant guilty of all four robbery counts and found all four firearm enhancements true. In bifurcated proceedings, the jury found the two prior strike allegations true. The court granted defendant's *Romero*[4] motion as to one of the prior strike convictions. The court sentenced defendant to an aggregate term of 32 years in prison.

## II. DISCUSSION

Defendant contends the trial court abused its discretion by denying his motion to reappoint counsel after granting his request to represent himself under *Faretta*. He acknowledges his request, made on the first day of trial, was untimely, but contends the trial court was incorrect as to his history of substituting counsel.

When a criminal defendant who previously waived his or her right to counsel and has elected self-representation seeks, during trial, to revoke that waiver, the trial court exercises its discretion under the totality of the circumstances. (*People v. Lawrence* (2009) 46 Cal.4th 186, 188 (*Lawrence*).) In ruling on such a request, among the factors the court may consider are: "(1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the

---

**4** *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney." (*People v. Elliott* (1977) 70 Cal.App.3d 984, 993-994 (*Elliott*).) These factors are not absolutely necessary for a court to consider, nor is any one factor necessarily determinative. (*Lawrence, supra*, at p. 196.)

Defendant had made multiple changes to his representation. After having refused to meet with counsel, defendant made a *Marsden* motion in which he complained about the representation of the first two public defenders to represent him. He claimed that one had continued the arraignment against his wishes and the other had not been available to him and had not tried to meet with him. He claimed the public defender's office had engaged in misconduct. This misconduct allegation led the third public defender to declare a conflict and be relieved as counsel. He disagreed with conflict counsel about the filing of various motions, which conflict counsel refused to file as they were without merit. Based on conflict counsel's refusal, defendant made a *Faretta* motion. Thus, defendant was represented by four different attorneys and had disputes with them all either about trial tactics or their office's conduct in the proceedings. It was reasonable for the court to conclude that if counsel was reappointed, defendant would continue to have conflicts with counsel and would again seek to change his representation, causing further disruption and delay to the trial.

Defendant requested reappointment of counsel on the day of trial, just prior to jury selection. By that point, defendant had been representing himself for nine months and had filed numerous, voluminous motions. Trial was continued at least four times because of defendant's motions. Defendant also refused to be transported to court at least twice on the date trial was set. On the day of trial, defendant also made two motions to disqualify the judge.

7

Defendant was charged with four separate robberies occurring on separate dates. There was significant discovery involved in the case and multiple witnesses. Defendant was faced with a possible sentence of 100 years to life, plus 40 years. The trial court could reasonably conclude a new attorney would need a continuance. In addition, the crimes were committed three years earlier, and defendant had been arraigned over 15 months earlier. There were numerous witnesses who were prepared to testify and had been waiting to do so for some time.

Finally, we are not convinced that defendant's claimed inability to effectively represent himself at trial warranted reappointment of counsel. Defendant "was told of—and affirmed his understanding of—the risks and disadvantages of self-representation before" his *Faretta* waiver. (*Lawrence, supra,* 46 Cal.4th at p. 195.) "Because defendant had been fully advised before he chose self-representation, his later change of mind properly bore less weight in the trial court's discretionary decision on the revocation request." (*Id.* at pp. 195-196.) Defendant had not suddenly learned on the day of trial that he was facing a "life case," that there were "a lot of rules that need to be attended to," that he had limited access to the law library and research materials, or that the district attorney had greater qualifications in trying a case than he did. He was explicitly advised of each of these facts before he entered the waiver. He had not just discovered that he might "be in over [his] head," "he had simply reweighed the pros and cons of self-representation and changed his mind as to the best course." (*Id.* at p. 195.) Moreover, a "defendant's asserted ineffectiveness at self-representation does not demonstrate an abuse of discretion. Defendant was untrained in the law and may not have been especially experienced in court procedures, but the same could be said of many, if not most, in propria persona criminal defendants. That defendant's defense would have been more effectively presented (or a better sentence obtained through a negotiated plea) had he been represented is likely. But if that fact were determinative, virtually all self-

representing defendants would have the right to revoke their counsel waivers at any time during trial. That is not the law." (*Id*. at p. 196.)

Based on the totality of the circumstances, we find no abuse of discretion in the denial of the belated request for reappointment of counsel.

## III. DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

KRAUSE, J.

9