<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090151 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE011674) |
| v. | ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION [NO CHANGE IN JUDGMENT] |
| ALVON SHONER SURRELL, | |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the nonpublished opinion filed herein on June 1, 2022, be modified as follows: At page 11, omit footnote 5, and renumber footnote 6 accordingly. There is no change in the judgment. The petition for rehearing is denied.

/S/

------------------------
HULL, Acting P. J.

/S/

------------------------
RENNER, J.

/S/

------------------------
KRAUSE, J.

1

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C090151 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE011674) |
| v. | OPINION ON TRANSFER |
| ALVON SHONER SURRELL, |  |
| Defendant and Appellant. |  |

After numerous prior attorneys for defendant were replaced, Alvon Shoner Surrell made a motion under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) to represent himself. On the first day of trial, defendant asked the trial court to reappoint counsel. The trial court denied the request. Defendant represented himself at trial and the jury found him guilty of four robberies (Pen. Code, § 211),[1] and found true a firearm enhancement as to each robbery (§ 12022.53, subd. (b)). On appeal, defendant contends

---

[1] Undesignated statutory references are to the Penal Code.

1

the trial court abused its discretion by denying his untimely request for reappointment of counsel. In an unpublished opinion, we affirmed the judgment. (*People v. Surrell* (Dec. 9, 2021, C090151) [nonpub. opn.].)

Our Supreme Court granted review and transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of section 1170 as amended by Assembly Bill No. 124 (Stats. 2021, ch. 695) and Senate Bill No. 567 (Stats. 2021, ch. 731). The parties thereafter filed supplemental briefs. Defendant argues the provisions apply to him retroactively and require remand because he may be entitled to a lower term sentence because he might have experienced childhood trauma. The People agree the provisions apply retroactively to defendant but contend remand is unnecessary as the circumstances he cites do not qualify as trauma, and there is no evidence those circumstances contributed to the commission of the offenses.

Upon reconsideration, we conclude defendant has not demonstrated that any of the circumstances listed in section 1170 contributed to the commission of the robbery and he is therefore not entitled to resentencing based on the amendments in Senate Bill No. 567 and Assembly Bill No. 124. We affirm.

## I. BACKGROUND

The substantive facts underlying defendant's convictions are not recounted, as they are not relevant to the disposition on appeal.

On January 30, 2018, defendant was arraigned on two cases alleging a total of four robberies, accompanying firearm enhancements, and prior strike convictions. Public defender Allison Williams represented defendant at the arraignment.

Approximately one month later, defendant made a *Marsden*[2] motion to relieve his appointed counsel. Ashley Burg was the public defender assigned to represent defendant after his case proceeded past arraignment and was his attorney when defendant made the

_____

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2

*Marsden* motion. Defendant alleged that public defender Williams had continued the matter at the arraignment, against his wishes, as he had wanted to plead, go to preliminary hearing, and exercise his right to a speedy trial. He also stated that public defender Burg could have tried to contact him in the period when the matter was continued and inform him of what was happening in his case. Burg noted the seriousness of the charges defendant faced, the magnitude of discovery yet to be received, and defendant's potential three strikes sentencing exposure. Given these circumstances, she did not believe anyone in the public defender's office would have advised defendant to proceed to set the case for preliminary hearing at the first court appearance. She also indicated she had not met with defendant, as he had refused to meet with her. Defendant confirmed he had refused to meet with Burg, because once he had made up his mind that he did not need "present counsel" to be part of the case, he did not feel compelled to meet with her. The trial court denied the motion.

On March 6, 2018, defendant pled not guilty. He was advised he faced a maximum exposure of 40 years, plus 100 years to life. Following a preliminary hearing, defendant was held to answer on a consolidated complaint alleging he committed four counts of robbery, personally used a firearm in each, and had two prior strike convictions. The court deemed the consolidated complaint an information. Defendant again entered pleas of not guilty.

On June 25, 2018, defendant's public defender, Melissa McElheney, declared a conflict, apparently based on the prior *Marsden* proceedings and defendant's claims of misconduct by the public defender's office. The court relieved the public defender's office as counsel and appointed conflict counsel.

One month later, defendant's new appointed counsel, Alan Donato, advised the court he had put the matter on calendar, as defendant wanted to represent himself. Defendant wanted to represent himself because Donato refused to file motions defendant wanted him to file, which Donato had concluded were without merit. The hearing on the

3

motion was continued to permit defendant and his attorney to complete the waiver forms. At the August 6, 2018 *Faretta* hearing, defendant was explicitly advised of his exposure to four 25 year to life terms, plus 40 years as a result of the firearm enhancement allegations. Defendant indicated he understood the potential sentence. Defendant also indicated he understood his right to an attorney, a speedy trial by jury, to subpoena witnesses and records, confront and cross-examine witnesses, against self-incrimination, and to self-representation. He indicated he was not a high school graduate, but he had obtained a GED and worked as a real estate consultant. He was advised of, and acknowledged, the dangers and disadvantages of self-representation, including that without an attorney, he would be required to: (1) follow the technical rules of substantive law, procedure, evidence, and courtroom protocol without the assistance of a lawyer; and (2) conduct his own trial, including making motions, selecting a jury, cross-examining witnesses, presenting and examining his own witnesses, making appropriate objections and motions, preparing jury instructions, and making post-trial motions. In addition, he would not receive assistance from the court and because of his custodial status, it would be difficult to contact witnesses, investigate his case, and he would have limited access to the telephone and law library. The court advised him he was going to be facing "an incredibly experienced prosecutor." He was also advised a subsequent motion to give up his pro per status might be denied and he would still have to proceed without an attorney, and that he had no right to standby or advisory counsel. The court recommended defendant not represent himself and, instead, accept court-appointed counsel. Defendant stated he understood all of the advisements, and defendant still wanted to represent himself.

After inquiring into defendant's legal background, training, and knowledge, the court found defendant had the ability to act as his own attorney; and, had knowingly, intelligently, and voluntarily chosen to act as his own attorney, with full knowledge of the

4

risks and dangers of doing so. Accordingly, the court granted his *Faretta* motion and relieved appointed counsel.

In the ensuing nine months, defendant filed numerous motions, including a motion to dismiss. The trial court denied these motions. Trial was originally set for September 27, 2018 and was continued as a result of defendant's motions. The trial date was reset to November 14, 2018, and was continued to January 24, 2019, because of defendant's motions. On January 24, 2019, defendant's motion to continue was granted. Trial was reset for March 25, 2019. On March 25, 2019, the Sheriff's Department advised the court that defendant refused to be transported from jail to court. Trial was reset to April 24, 2019. Defendant again refused to be transported to court. Trial was then set for May 9, 2019.

On May 9, 2019, defendant made an oral motion to disqualify the judge under section 170.6 and a challenge for cause. The court denied these motions. As the discussions proceeded as to how trial would be conducted, including examination of witnesses and motions in limine, defendant asked the court if it was "too late for me to request counsel because this—at this point, it is a little intimidating. There's a lot to remember. There are a lot of rules that need to be attended to. I want to give myself my best defense. I want to be able to do that. I believe I'm entitled to and I expect it even for myself. So I think that is a fair question for me to ask. Whether it's too late or not, I don't know." He went on to state he had sought self-representation as he did not think he could get a fair trial with the available representation; "However, like I said—like the D.A. just said, this is a life case and it's extremely technical, and it is, if I could be honest intimidating to have so much riding on every single detail that is going to be played out over the next two, three, four days." The court asked the prosecutor for her thoughts, noting that reappointing counsel would require a delay. The prosecutor objected. She noted the crimes occurred in 2016, so were three years old. There were four victim witnesses and several other civilian witnesses who had been waiting to testify for quite

5

some time and were prepared to testify, and the matter was set to go to trial. She also argued defendant had been represented by three different public defenders and conflict counsel, and he had been conducting his own defense for months. Defendant summed up the reasons for his request, stating: "I learned enough about the law to find out that at this point I may be in over my head. The severity of the case requires a little more than I can offer. My hands are tied in terms of just my ability to access the law library, my ability to research materials, my ability to try to catch up to speed. [The D.A.] is qualified. . . . So I understand what I'm up against, and that is the reason why I ask for an attorney at this point."

The court noted that previously defendant had, and replaced, four attorneys and experienced significant conflicts with each. The court had no confidence that if it appointed another attorney, defendant would have a cooperative relationship with that attorney. Rather, the court expected there would be more problems and defendant would again request to substitute counsel or represent himself. The court also considered that the case was three years old, and the People also had a right to trial in a timely manner. The motion was made on the day set for trial, late in the proceedings, after defendant had brought many motions, and the matter had been continued several times. Defendant had repeatedly stated he was ready for trial. Accordingly, based on the totality of the circumstances, the court denied the motion.

Following trial, the jury found defendant guilty of all four robbery counts and found all four firearm enhancements true. In bifurcated proceedings, the jury found the two prior strike allegations true. The court granted defendant's *Romero*[3] motion as to one of the prior strike convictions. The court sentenced defendant to an aggregate term of 32 years in prison, consisting of: the midterm of 3 years on count one, doubled because of the strike, plus a consecutive 10 years for the attendant firearm enhancement,

_____

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

6

a consecutive two years each for counts two, three, and four (one-third the midterm, doubled), plus a consecutive three years four months for each attendant firearm enhancement.

## II. DISCUSSION

*A.* Faretta *Motion*

Defendant contends the trial court abused its discretion by denying his motion to reappoint counsel after granting his request to represent himself under *Faretta*. He acknowledges his request, made on the first day of trial, was untimely, but contends the trial court was incorrect as to his history of substituting counsel.

When a criminal defendant who previously waived his or her right to counsel and has elected self-representation seeks, during trial, to revoke that waiver, the trial court exercises its discretion under the totality of the circumstances. (*People v. Lawrence* (2009) 46 Cal.4th 186, 188 (*Lawrence*).) In ruling on such a request, among the factors the court may consider are: "(1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney." (*People v. Elliott* (1977) 70 Cal.App.3d 984, 993-994 (*Elliott*).) These factors are not absolutely necessary for a court to consider, nor is any one factor necessarily determinative. (*Lawrence, supra*, at p. 196.)

Defendant had made multiple changes to his representation. After having refused to meet with counsel, defendant made a *Marsden* motion in which he complained about the representation of the first two public defenders to represent him. He claimed that one had continued the arraignment against his wishes and the other had not been available to him and had not tried to meet with him. He claimed the public defender's office had

7

engaged in misconduct. This misconduct allegation led the third public defender to declare a conflict and be relieved as counsel. He disagreed with conflict counsel about the filing of various motions, which conflict counsel refused to file as they were without merit. Based on conflict counsel's refusal, defendant made a *Faretta* motion. Thus, defendant was represented by four different attorneys and had disputes with them all either about trial tactics or their office's conduct in the proceedings. It was reasonable for the court to conclude that if counsel was reappointed, defendant would continue to have conflicts with counsel and would again seek to change his representation, causing further disruption and delay to the trial.

Defendant requested reappointment of counsel on the day of trial, just prior to jury selection. By that point, defendant had been representing himself for nine months and had filed numerous, voluminous motions. Trial was continued at least four times because of defendant's motions. Defendant also refused to be transported to court at least twice on the date trial was set. On the day of trial, defendant also made two motions to disqualify the judge.

Defendant was charged with four separate robberies occurring on separate dates. There was significant discovery involved in the case and multiple witnesses. Defendant was faced with a possible sentence of 100 years to life, plus 40 years. The trial court could reasonably conclude a new attorney would need a continuance. In addition, the crimes were committed three years earlier, and defendant had been arraigned over 15 months earlier. There were numerous witnesses who were prepared to testify and had been waiting to do so for some time.

Finally, we are not convinced that defendant's claimed inability to effectively represent himself at trial warranted reappointment of counsel. Defendant "was told of— and affirmed his understanding of—the risks and disadvantages of self-representation before" his *Faretta* waiver. (*Lawrence, supra,* 46 Cal.4th at p. 195.) "Because defendant had been fully advised before he chose self-representation, his later change of mind

8

properly bore less weight in the trial court's discretionary decision on the revocation request." (*Id.* at pp. 195-196.) Defendant had not suddenly learned on the day of trial that he was facing a "life case," that there were "a lot of rules that need to be attended to," that he had limited access to the law library and research materials, or that the district attorney had greater qualifications in trying a case than he did. He was explicitly advised of each of these facts before he entered the waiver. He had not just discovered that he might "be in over [his] head," "he had simply reweighed the pros and cons of self-representation and changed his mind as to the best course." (*Id.* at p. 195.) Moreover, a "defendant's asserted ineffectiveness at self-representation does not demonstrate an abuse of discretion. Defendant was untrained in the law and may not have been especially experienced in court procedures, but the same could be said of many, if not most, in propria persona criminal defendants. That defendant's defense would have been more effectively presented (or a better sentence obtained through a negotiated plea) had he been represented is likely. But if that fact were determinative, virtually all self-representing defendants would have the right to revoke their counsel waivers at any time during trial. That is not the law." (*Id.* at p. 196.)

Based on the totality of the circumstances, we find no abuse of discretion in the denial of the belated request for reappointment of counsel.

B. *Amended Section 1170*

On transfer, the Supreme Court order directed us to reconsider this cause in light of section 1170, as amended by Senate Bill No. 567 and Assembly Bill No. 124. Senate Bill No. 567 amended section 1170. (See Stats. 2021, ch. 731, § 1.3, effective Jan. 1, 2022.) Assembly Bill No. 124 also proposed amendments to section 1170 and was signed by the Governor in 2021.[4] (See Stats. 2021, ch. 695, § 5.) However, because Senate Bill No. 567 was the last bill signed by the Governor and bears the higher chapter

---

[4] Assembly Bill No. 124 also amended section 236.23, and added sections 236.15, 236.24, and 1016.7. (Stats. 2021, ch. 695, §§ 1-4.) Those provisions are not relevant here.

9

number, its amendments to section 1170 prevail over those specified in Assembly Bill No. 124. (Gov. Code, §§ 9510, 9605, subd.(b); *In re Thierry S.* (1977) 19 Cal.3d 727, 738-739.)

Among other things, Senate Bill No. 567 sets a presumption that the trial court will impose the lower term under specified circumstances, including, as relevant here, when a defendant has experienced childhood trauma, including but not limited to abuse, neglect, exploitation, or sexual violence and that trauma was a contributing factor in the commission of the offense. (§ 1170, subd. (b)(6)(A), added by Stats. 2021, ch. 731, § 1.3.)

The parties agree that as an ameliorative statute, the amended provisions of section 1170 apply retroactively to defendant's nonfinal judgment. They disagree, however, as to whether remand for resentencing is necessary. Defendant argues the record demonstrates he may have experienced childhood trauma, which might entitle him to the lower term on his principal robbery conviction. Specifically, he was "primarily raised by his mother in Oakland. [Citation.] At the time, Oakland 'was an environment where there was no opportunity for advancement due to extreme poverty, a drug epidemic, and prevalent racial prejudice.' [Citation.] [Defendant] 'and his brother basically raised themselves because their parents worked a lot.' " The People argue defendant has forfeited this claim by failing to explain how these circumstances amount to trauma within the meaning of the statute. The People also contend the circumstances do not amount to trauma under the statute, and even if they did, defendant has not demonstrated those circumstances from his youth contributed to his commission of these four armed robberies.

"Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues [forfeited]." (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99; see also *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; Cal Rules of Court, rule 8.204(a)(1)(B).) We will not develop

10

the argument for defendant. (*People v. Oates* (2004) 32 Cal.4th 1048, 1068, fn. 10.) The absence of cogent legal argument or citation to authority allows us to treat the claim as forfeited. (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) As the appellant, it is defendant's burden on appeal to establish both error and prejudice. (*Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601; *People v. Homick* (2012) 55 Cal.4th 816, 861.) To meet this burden, defendant must establish *both* that he experienced childhood trauma within the meaning of the statute *and* that the trauma was a contributing factor in the commission of the offense. Defendant has done neither. Defendant has offered no argument that the circumstances of his youth qualify as trauma under the statute. He has not even alleged he was subjected to parental neglect.[5] Nor has he alleged *he* lived in extreme poverty, or was personally denied opportunity for advancement by the drug epidemic or racial prejudice in Oakland, California. To the extent he did experience childhood trauma, he has also not argued those circumstances contributed to the commission of the four armed robberies committed when he was 46 years old, after over 10 years with no criminal convictions.[6] Accordingly, we find that claim forfeited.

---

[5] We note, having parents who "worked a lot" by itself is unlikely to constitute neglect. This is particularly true, where as here, defendant's mother was employed by a school district and his father was a university professor who was active in his life.

[6] We note, the record also shows in that period of no criminal convictions, defendant worked as a carpenter until he suffered a workplace injury, then as an executive assistant, then in real estate consulting. He also started two businesses.

## III.  DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

HULL, Acting P. J.

/S/

KRAUSE, J.