Filed 7/21/22  P. v. Huffman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075495 |
| v. | (Super. Ct. No. INF1600339) |
| GEORGE DAVID HUFFMAN, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Samuel Diaz, Jr., Judge.

Affirmed in part, reversed and remanded with directions.

Robert F. Somers, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Alan L.

Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

INTRODUCTION

While E.B. was pushing a shopping cart to a parking lot cart corral, defendant and appellant George David Huffman jumped into the driver's seat of E.B.'s car and drove away. He then crashed into D.A.'s car, seriously injuring D.A. and his wife. A draw of defendant's blood revealed that he had a blood alcohol content level well above the legal limit. A jury convicted defendant of various offenses and the trial court sentenced him to almost 12 years in prison.

Defendant contends the trial court erroneously denied his request for counsel on the first day of trial, improperly excluded three of his experts, and failed to instruct the jury on lack of consciousness. He argues these errors individually and cumulatively require reversal. He also argues he is entitled to a mental health diversion, and that he is entitled resentencing under newly enacted legislation. We agree that defendant is entitled to resentencing, but reject defendant's remaining contentions and affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant was in the Riverside County Sheriff's custody for about a week in February 2016. While in custody, defendant did not receive Venlafaxine, a psychotropic medication he had been prescribed to treat his mental illness.

After defendant was released from the Sheriff's custody, he was confused, incoherent, and not making sense. He could not get any psychotropic medication that he

needed. According to defendant's brother, Karl, defendant wanted to see their father, but he had been dead for several years. Defendant also made statements that Karl thought could not have been true.

Four or five days after his release from custody, 73-year-old E.B. was loading groceries into her car in a grocery store's parking lot around 2:00 or 2:30 p.m. She left her driver's side door open and left the car's key fob in her purse on the passenger seat while she loaded her groceries in the trunk. After she finished, she pushed her cart to the cart corral in the parking lot. While she was doing so, defendant ran to her car and jumped into the passenger seat. E.B. ran to her car and pulled on the driver's side door, which was still open because defendant's leg was hanging out of the car. Defendant lifted his leg into the car, pulled the door shut while E.B. tried to open it, and started the car. He activated the car's keyless ignition, put the car in reverse, and drove off.

Shortly after exiting the store's parking lot, defendant ran a red light and collided with D.A.'s car. D.A. was hospitalized for two weeks, and his wife, N.A., who was in the passenger seat, was hospitalized for a month.

Defendant was transported to the hospital, where his blood was drawn about five hours later. Defendant had a blood content of .13 percent, which meant that his blood-alcohol level at the time of the incident was estimated to have been between .18 to .23 percent. Testing also revealed that defendant had diazepam (Valium) and its metabolite, nordiazepam, in his system.

A jury convicted defendant of carjacking (Pen. Code,[1] § 215, subd. (a); count 1); felony vehicle theft (Veh. Code, § 10851, subd. (a); count 2); causing injury while driving under the influence of alcohol (Veh. Code, § 23153, subd. (a); count 3); and causing injury while driving with a blood alcohol content of .08 or more (Veh. Code, § 23153, subd. (b); count 4). The jury also found that E.B. was aged 60 or older (§ 1203.09, subd. (f)) and that, in committing counts 3 and 4, defendant caused injury to D.A. (Veh. Code, § 23558) and great bodily injury to D.A. and N.A. (§ 12022.7, subd. (a)). In a later bifurcated proceeding, the jury found that defendant had a prior conviction for vehicle theft (Veh. Code, § 10851). The trial court sentenced him to 11 years, eight months in prison.

## III.

## DISCUSSION

A. *Defendant's Request for Reappointment of Counsel*

Defendant was appointed counsel at his arraignment in April 2016. After several continuances, defendant made a *Faretta*[2] motion to represent himself in October 2017. The trial court found defendant's waiver of counsel knowing, intelligent, and voluntary, and granted his *Faretta* request to represent himself.

Between defendant's *Faretta* waiver and his trial, the trial court repeatedly granted the parties' request to continue the trial. The prosecution requested one continuance,

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

[2] *Faretta v. California* (1975) 422 U.S. 806.

defendant requested nine continuances, and the parties jointly stipulated to nine other continuances.

The case was assigned to Honorable Samuel Diaz for trial. On October 18, 2019, defendant moved to disqualify Judge Diaz, arguing that Judge Diaz was biased against him. Judge Diaz denied the motion as untimely.

On November 4, 2019, defendant moved to continue the trial. He argued that his investigator had failed to procure funding that defendant needed to buy supplies for trial preparation. Judge Diaz denied the motion on the ground that it should have been directed to the "pay panel judges" responsible for such motions.

Later that day, defendant again moved to disqualify Judge Diaz. Defendant argued Judge Diaz was biased against him and could not fairly hear the matter because of his connections to the Riverside County Sheriff's Department and Public Defender's Office. Judge Diaz denied the motion.

Defendant then moved for a continuance because discovery he sought remained outstanding. Judge Diaz granted a two-week continuance and, with defendant's agreement, set the case for trial on December 2, 2019.

On November 18, 2019, defendant filed a third motion to disqualify Judge Diaz. As in his previous motions, defendant claimed that Judge Diaz was biased against him. Judge Diaz again denied the motion.

On December 2, 2019, the day set for trial, defendant moved to change venue. Judge Diaz denied the motion.

Shortly after making the motion, defendant told the trial court that he wanted an attorney, but did not say why. The trial court denied the request, finding that it was "to delay the process" and noting that the case was "1,215 days old" (about three years and four months). The prosecutor requested a one-week continuance, which the trial court granted. Defendant also accepted the trial court's offer of appointing advisory counsel, but advisory counsel could not be appointed.

On December 9, 2019, the day reset for trial, defendant filed a written motion to withdraw his *Faretta* waiver and for counsel to be reappointed. Defendant stated that he had been assaulted in jail on November 2 and was not capable of representing himself because of the injuries he suffered. The trial court denied the motion, again finding that it was made only to delay the trial. Defendant therefore represented himself at trial, which began three days later.

Defendant contends the trial court erroneously denied his request for reappointment of counsel. We find no abuse of discretion.

When a propria persona defendant requests the reappointment of counsel, "a trial court should consider, along with any other relevant circumstances, '(1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own

6

attorney.'" (*People v. Lawrence* (2009) 46 Cal.4th 186, 191-192.)  These criteria, however, "'"are not absolutes, and in the final analysis it is the totality of the facts and circumstances which the trial court must consider in exercising its discretion as to whether or not to permit a defendant to again change his mind regarding representation . . . ."'" (*Ibid.*)

We review the trial court's denial of a propria persona defendant's request for reappointment of counsel for "an abuse of its discretion under the totality of the circumstances [citation], not whether the court correctly listed factors or whether any one factor should have been weighed more heavily in the balance." (*Lawrence*, *supra*, 46 Cal.4th at p. 196.)  "To establish an abuse of discretion, [a defendant] must demonstrate that the trial court's decision was so erroneous that it 'falls outside the bounds of reason.' [Citations.]  A merely debatable ruling cannot be deemed an abuse of discretion. [Citations.]  An abuse of discretion will be 'established by "a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390.)

The trial court here reasonably found that defendant's request for reappointment for counsel was an effort to further delay the trial and permissibly denied the request on that basis.  When defendant requested counsel on the day set for trial, his case had been pending for over three years.  During that time, the trial court had continued the trial repeatedly at defendant's request.  A week after the trial court denied his motion for

7

reappointment of counsel, defendant again requested counsel because he claimed he had been assaulted in jail on the day of his prior request for counsel, but he provided no supporting documentation. In the weeks before trial, defendant filed three meritless motions to disqualify Judge Diaz and a meritless motion to change venue.

Given how long defendant's case had been pending, the repeated continuances he had been granted, and his consistent attempts to delay the trial, the trial court reasonably found that defendant's alleged reasons for seeking counsel were not credible and that he was merely trying to further delay the trial. On this record, we cannot find that the trial court abused its discretion in denying defendant's request for reappointment of counsel.

To support his position that trial court abused its discretion, defendant relies heavily on *People v. Elliott* (1977) 70 Cal.App.3d 984 and *People v. Cruz* (1978) 83 Cal.App.3d 308, but both cases are distinguishable. Unlike this case, there was no evidence in either *Elliott* or *Cruz* that the defendant's request for reappointment of counsel was an attempt to delay the case. Instead, the defendant in both cases had a valid reason to revoke his *Faretta* waiver and request reappointment of counsel. In *Elliott*, the defendant wanted counsel after the People amended the information—after the jury had been selected—to charge the defendant with two additional felony counts. (*People v. Elliott*, *supra*, at p. 994.) His reason for wanting an attorney was therefore "a valid one." (*Id.* at p. 997.) In *Cruz*, the defendant's request for reappointment for counsel "was made in good faith and not for the purposes of delay and obstruction." (*People v. Cruz*, *supra*, at p. 320.) *Elliott* and *Cruz* therefore do not apply here.

8

B. *Precluding Expert Testimony*

Defendant contends the trial court erred by excluding the testimony of Drs. Chalgujian, Berg, and Levinson. We find no abuse of discretion.

Under Evidence Code section 732, the trial court may "limit the number of expert witnesses to be called by any party." The trial court thus has "broad discretion to limit the number of competing experts, or to exclude cumulative . . . expert testimony altogether." (*People v. Stoll* (1989) 49 Cal.3d 1136, 1159, fn. 20.) We review the trial court's evidentiary rulings for an abuse of discretion. (*People v. Lucas* (2014) 60 Cal.4th 153, 226, disapproved on another ground by *People v. Romero* (2015) 62 Cal.4th 1, 53, fn. 19.) We may affirm the trial court's evidentiary ruling if it "was correct on any ground." (*People v. Geier* (2007) 41 Cal.4th 555, 582, overruled on other grounds as stated in *People v. Houston* (2012) 54 Cal.4th 1186, 1220.)

Defendant claims Drs. Chalgujian, Berg, and Levinson would have testified that his mental illness caused him to commit the offenses. But that was essentially Dr. Harris's opinion. Dr. Harris testified that, based on his review of Dr. Levinson's report, he believed that defendant was "more likely than not" in a "manic state of mind" when he committed the offenses, which may have been drug-induced. In Dr. Harris's view, defendant was suffering from "severe mental illness," and may have been experiencing mania, euphoria, and possibly delusions. Dr. Harris described defendant's state at the time of the offenses as a "[b]ipolar break," a "manic crisis." He explained that people in those states are "irrational . . . overexcited . . . giving away your money, writing checks

9

for people, handing people money in the street." Dr. Harris also testified that sudden discontinuation of Venlafaxine can cause delirium, hallucinations, and pseudodementia. It can also cause patients suffering from mania to become suicidal and irrational. Dr. Harris explained, however, that the worse of these sudden withdrawal symptoms usually dissipate within three to four days after the abrupt discontinuation of Venlafaxine.

In short, Dr. Harris's testimony strongly suggested that defendant's mental illness and the sudden discontinuation of his medication may have caused his behavior on the day of his offenses.

According to defendant, Drs. Chalgujian, Berg, and Levinson would have testified that his mental illness and his abrupt discontinuance of Venlafaxine caused him to commit the offenses. Their testimony thus would have been cumulative to Dr. Harris's testimony. The trial court could have properly excluded it on that basis. (*People v. Stoll*, *supra*, 49 Cal.3d at p. 1159, fn. 20.)[3]

Defendant argues Dr. Harris's testimony differed from the opinions of Drs. Chalgujian, Berg, and Levinson because Dr. Harris never clearly testified that defendant's mental health issues caused his behavior while suggesting that his behavior may have been drug-induced. In defendant's view, Drs. Chalgujian and Berg would have testified that defendant's mental illness caused his behavior.

---

[3] We need not and do not express an opinion on the parties' dispute about whether Drs. Chalgujian, Berg, and Levinson could have permissibly testified as to whether they believed that defendant's mental illness caused him to commit the offenses and thus whether he had the requisite mental state.

Defendant claims Dr. Harris's testimony differed from the proffered testimony of Drs. Chalgujian and Berg because they would have clearly testified that defendant's mental issues caused him to commit the offenses. But defendant never directly asked Dr. Harris at trial to discuss his ultimate opinion as to whether he believed that defendant's mental health issues caused his behavior. If defendant wanted to elicit Dr. Harris's opinion on that issue, he could have questioned him about it.

Moreover, Dr. Harris did testified that it was "more likely than not" that defendant was suffering from a "severe mental illness," a "bipolar break," and a "manic crisis" when he committed the offenses. Dr. Harris opined that defendant likely was acting irrationally and could have been suffering from mania, euphoria, and possibly delusion. Dr. Harris also testified that a sudden discontinuation of the medication defendant should have been taking at the time of the offense can cause delirium, hallucinations, and pseudodementia. In short, Dr. Harris's opinion suggested that defendant's mental illness may have caused his behavior, which was consistent with the proffered testimony of Drs. Chalgujian and Berg.

In any event, Dr. Chalgujian stated in her report[4] that defendant's "self medicating with stimulants . . . and downers . . . likely exacerbated his bipolar manic phase, resulting in his erratic [and] bizarre" conduct the day of the crimes. This is consistent with (and

---

[4] Dr. Chalgujian performed a court-ordered neuropsychological evaluation of defendant and defendant submitted her report to the court.

11

thus cumulative of) Dr. Harris's opinion that defendant's state when he committed the offenses may have been drug-induced.

As for Dr. Levinson, the trial court properly excluded his testimony because defendant failed to timely secure him as a witness. On the third day of a seven-day trial, the trial court asked defendant about witnesses he intended to present. Defendant said that he had "a difficult time finding" Dr. Levinson and had been trying to contact him for "over a year." The trial court noted that defendant should have already subpoenaed Dr. Levinson because "we're in the middle of trial." The next day, after the jury had been sworn and had begun hearing evidence, defendant told the trial court that his investigator was "running around subpoenaing" people and that he had found Dr. Levinson in Oregon. The trial court told defendant that Dr. Levinson could testify "for a limited purpose" only if Dr. Harris was unavailable, but noted that it appeared that defendant had not yet subpoenaed Dr. Levinson. The trial court explained that the trial would continue without any witnesses who had not been subpoenaed because the court lacked jurisdiction over them without a subpoena. Defendant subpoenaed Dr. Harris, who testified later that day.

Defendant claims the trial court erroneously excluded Dr. Levinson and allowed him to testify only if Dr. Harris was unavailable. But, as of the fourth day of trial, defendant had not yet subpoenaed Dr. Levinson. So even if the trial court allowed Dr. Levinson to testify, it was unknown whether he could have traveled to California to testify at trial. Because it was entirely speculative that Dr. Levinson was willing to

12

testify at defendant's trial without having been subpoenaed and could have testified at the trial without a continuance, the trial court properly excluded his testimony. (Cf. *Jenson v. Superior Court* (2008) 160 Cal.App.4th 266 271 ["When a witness is not under subpoena, his or her absence generally does not constitute good cause for the continuance of a trial" so the witness can testify.].)

Relying on *People v. Herrera* (2016) 247 Cal.App.4th 467 (*Herrera*) and *People v. Cortes* (2011) 192 Cal.App.4th 873 (*Cortes*), defendant contends the trial court prejudicially abused its discretion by excluding his experts. Both cases are distinguishable.

In *Herrera*, the trial court erroneously precluded the defendant's only expert from testifying about the defendant's mental condition, which was "the only issue" to be decided at trial. (*Herrera*, *supra*, 247 Cal.App.4th at p. 478.) Thus, "'the trial court's ruling thus effectively eviscerated any defense'" the defendant had on the only material issue for the jury. (*Ibid*.) The trial court in *Cortes* also prohibited "any testimony about [the] defendant's mental condition" from the defendant's only expert, which "eviscerated any defense defendant had to premeditated and deliberated murder." (*Cortes*, *supra*, 192 Cal.App.4th at p. 912.)

Unlike the exclusion of the defendant's sole expert witness in *Herrera* and *Cortes*, the trial court's exclusion of defendant's three experts did not preclude him from advancing his defense that he did not have the requisite mental state to commit the

13

charged offenses. Defendant was still able to provide expert testimony on that issue from Dr. Harris in support of his defense. *Herrera* and *Cortes* therefore do not apply here.

C. *Unconsciousness Instruction*

Defendant argues, the People concede, and we agree that the trial court erred by denying defendant's request for an unconsciousness instruction. A trial court must give an unconsciousness instruction "if it appears the defendant is relying on the defense, or if there is substantial evidence supporting the defense and the defense is not inconsistent with the defendant's theory of the case." (*People v. Rogers* (2006) 39 Cal.4th 826, 887.) Defendant's main defense, which was supported by Dr. Harris's testimony, was that defendant was unconscious at the time of the offenses and that his behavior was caused by his mental illness. The trial court thus should have instructed the jury on unconsciousness.

We agree with the People, however, that the instructional error was harmless because "'the factual question posed by the omitted instruction [of unconsciousness] was necessarily resolved adversely to [defendant] under other, properly given instructions.'" (*People v. Wright* (2006) 40 Cal.4th 81, 98.) The jury was instructed on mental illness and on voluntary intoxication as defenses to the specific intent element of carjacking and vehicle theft. By convicting defendant of those offenses, the jury found that defendant had the requisite mental state. The jury thus necessarily found that defendant was not unconscious at the time of the offenses, but instead had the specific intent to commit carjacking and vehicle theft. The trial court's failure to instruct the jury on

14

unconsciousness therefore "was harmless under any standard."  (*People v. Lujano* (2017) 15 Cal.App.5th 187, 195.)

D.  *Cumulative Error*

Defendant argues that even if the alleged errors outlined above do not individually warrant reversal, their cumulative effect does.  Defendant maintains that, taken together, the trial court's errors constitute cumulative error that warrants reversal.  We disagree.  "'[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.'"  (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)  The only error was the trial court's failure to instruct the jury on unconsciousness, which was harmless.  As a result, there was no cumulative error. (*People v. Reed* (2018) 4 Cal.5th 989, 1018 ["Because we have found but one error—which was harmless—there is no prejudice to cumulate."].)

E.  *Mental Health Diversion*

Defendant contends the trial court erred by denying his request for pretrial diversion under section 1001.36.  This court has twice held that defendants charged with DUI offenses, like defendant here, are categorically ineligible for pretrial diversion. (*Tellez v. Superior Court* (2020) 56 Cal.App.5th 439; *Moore v. Superior Court* (2020) 58 Cal.App.5th 561.)  Because defendant offers no compelling reason for us to revisit these decisions, we follow them here, and thus conclude the trial court properly denied defendant's section 1001.36 pretrial diversion request.

F.  *Resentencing*

The trial court sentenced defendant to an upper, nine-year term for the carjacking conviction (count 1).  The court also sentenced him to an upper, four-year term for his vehicle theft conviction (count 2) and an upper, three-year term for his conviction for causing injury while driving with a blood alcohol content of .08 or more (count 4), but stayed those sentences under section 654.

Defendant contends we should remand for resentencing under recently amended sections 1170 and 654.  We agree as to section 1170, subdivision (b)(6)(A) and thus need not address his remaining arguments as to amended section, subdivision (b)(1) and (2) or amended section 654.

As amended, section 1170, subdivision (b)(6)(A) now provides that when the defendant "has experienced psychological, physical, or childhood trauma" that was a "contributing factor to the commission of the offense," the trial court must impose the lower term unless it finds aggravating factors that outweigh the mitigating circumstances such that the imposition of a lower term contrary to the interests of justice.  (Stats. 2021, ch. 731, § 1.3.)[5]  Defendant contends we should remand the matter so that the trial court can consider whether his "psychological trauma from his medication being discontinued"

_____

[5]  This subdivision provides in full:  "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:  [¶]  (A)  The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence"

16

or his childhood trauma were a "contributing factor" that mandates imposing the lower term under amended section 1170, subdivision (b)(6)(A).

We first note the parties agree that this amended statute is an ameliorative change in the law that applies retroactively to defendant's non-final case. We agree. (See *People v. Banner* (2022) 77 Cal.App.5th 226, 240 (*Banner*).)

The People emphasize that the trial court repeatedly stated at the sentencing hearing that it recognized defendant suffered from mental health issues. Before pronouncing its sentence, the trial court invited defense counsel to "present some mitigating circumstances," but noted that it was "very, very well aware of [defendant's] mental health issues that came out during trial" and in probation's report. The court was therefore "aware of the mitigating circumstances." The court explained that it would consider evidence of other mitigating circumstances, but again noted that it was "well aware" of defendant's "mental defect, mental illness, mental issues."

The court also noted it was aware of the "circumstances in the jail" before defendant's release that potentially contributed to him committing his current offenses. The court explained that it had taken defendant's mental health issues "into consideration" when sentencing him, including the fact that he did not have his medications when he was released from custody shortly before committing his current offenses.

The trial court then explained why it was sentencing defendant to the term imposed: "[defendant] was on supervised release, he was supposed to be on his best

behavior. He carjacked a car, drove away at high rate of speed and T-boned an elderly couple. They were seriously injured. They stayed weeks and weeks in the hospital. As a matter of fact, one of the victims sustained a broken femur, and to this day has a rod in one of the victim's legs, there's still a rod placed. That's why there's a [great bodily injury] allegation . . . . And he was on supervised release. He was supposed to be on his best behavior and he wasn't."

The trial court next explained why it was sentencing defendant to the upper term on count 1: " . . . the victim the defendant carjacked was over, also over the age of 60, so the Court found that to be no unusual circumstances exist. Defendant was on supervised release. He was supposed to be on his best behavior, and he wasn't. He committed this carjacking. 12 people found him guilty. And because he was on supervised release, Court is going to sentence the defendant to the upper term of nine years."

The trial court's comments show that the court did not find—and likely would never find—that defendant's mental health issues, whatever their source, were a mitigating factor that "significantly reduced culpability for the crime." (Cal. Rules of Court, rule 4.423, subd. (b)(2).) But, as relevant here, amended section 1170, subdivision (b)(1)(6)(A) requires trial courts to impose a lower term if a defendant's psychological or childhood trauma was a "contributing factor" to the commission of the offense. The fact that the trial court found that defendant's "mental illness was not a *significant* factor in the crime does not subsume a finding it was a lesser *contributing* factor." (*Banner*, *supra*, 77 Cal.App.5th at p. 241.) Because "mental illness may underlay a crime without

18

*also* significantly reducing culpability . . . not finding mental illness a mitigating factor under the Rules of Court does not preclude a separate finding psychological trauma [or childhood trauma] is a contributing factor to the crime under section 1170, subdivision (b)(6)." (*Id*. at p. 242.) For instance, "a court could find psychological trauma induced by mental illness a contributing factor in a crime notwithstanding the fact the person was lucid at the time of the crime." (*Ibid*.)

Although the trial court's comments strongly suggest that it would not find defendant's psychological or childhood trauma to be a *mitigating* factor under the Rules of Court, those comments do not "clearly indicate" that it would not find defendant's childhood trauma to be a *contributing* factor under section 1170, subdivision (b)(6)(A). (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [remand unnecessary when sentencing court's statements "clearly indicate" it would impose same sentence under new law]; *Banner*, *supra*, 77 Cal.App.5th at p. 242 [remanding because defendant and trial court did not have opportunity to determine whether "mental illness was a limited but nonetheless 'contributing factor' in the crime"].)

We therefore find remand appropriate so that the trial court can exercise its discretion to decide whether defendant's psychological or childhood trauma was a contributing factor to his commission of the offenses and, if so, whether "the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6); *Banner*, *supra*, 77 Cal.App.5th at p. 242.) We further find that a full resentencing is appropriate because "[a]pplication of the amended statute[] will require the trial court, at a minimum, to

reconsider which triad term to impose for certain counts of conviction and which terms to stay under section 654." (*People v. Jones* (2022) 79 Cal.App.5th 37, 46; see also *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.) As a result, we need not consider defendant's remaining arguments as to why a remand for resentencing is necessary.

IV.

DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated and the case is remanded for resentencing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.

20