Filed 3/9/26  P. v. Johnson CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B343359 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA458043) |
| v. | |
| JAMES JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Renee F. Korn, Judge. Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Heidi Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

This is James Johnson's second appeal. In his first appeal he argued the trial court erred in revoking his right under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) to represent himself and in appointing counsel to represent him at his sentencing hearing. We agreed with Johnson and directed the court to resentence him and to apply any ameliorative legislation that went into effect while his appeal was pending.

On remand the trial court granted Johnson's request to represent himself. At the sentencing hearing, which occurred after 16 months of continuances, Johnson (immediately after the court denied his request for another continuance) sought to revoke his waiver of his right to counsel. The court denied Johnson's request to reappoint counsel as untimely and resentenced him. Johnson argues the court erred in denying his request for counsel. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *A Jury Convicts Johnson of Multiple Crimes;*
*We Affirm the Convictions, but Vacate His Sentence*
*and Direct the Trial Court To Resentence Him*

In 2018 a jury convicted Johnson of attempted robbery (Pen. Code, §§ 211, 664);[1] assault with a deadly weapon (§ 245, subd. (a)(1)); assault with a firearm (§ 245, subd. (a)(2)); making a criminal threat (§ 422, subd. (a)); possessing a firearm as a felon (§ 29800, subd. (a)(1)); possessing ammunition as a felon

---

[1]     Statutory references are to the Penal Code.

(§ 30305, subd. (a)(1)); and possessing a short-barreled rifle or shotgun (§ 33215). The jury also found Johnson personally used a deadly or dangerous weapon and a firearm in committing the attempted robbery (§§ 12022, subd. (b)(1), 12022.53, subd. (b)). (*People v. Johnson* (Sept. 13, 2022, B310101) [nonpub. opn.] (*Johnson I*).)

At the first hearing after his conviction but before sentencing, Johnson asked the court to replace his appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118. When the trial court denied that request, Johnson made a motion to represent himself, which the court eventually granted. During a subsequent hearing, however, the court found Johnson failed to "'behave appropriately in lockup,'" revoked his right to represent himself, and appointed counsel to represent him. (*Johnson I, supra*, B310101.) At the sentencing hearing the court exercised its discretion under section 1385 and struck one of Johnson's prior serious or violent felony convictions under the three strikes law (§§ 667, subds. (b)-(i), 1170.12). The court sentenced Johnson to an aggregate prison term of 24 years eight months.

Johnson appealed, arguing the trial court erred in revoking his right to represent himself at sentencing. We agreed with Johnson and directed the trial court to resentence him, including under then-recent amendments to sections 654 and 1170. (*Johnson I, supra*, B310101.)

B.     *The Trial Court Grants Johnson's Requests To Represent Himself and for Multiple Continuances*

At a February 6, 2023 hearing the trial court appointed Johnson's trial counsel to represent him for sentencing. Approximately six months later, Johnson asked to represent

himself.  To ensure Johnson's waiver of his right to counsel was knowing and voluntary, the court confirmed with Johnson that he had placed his initials in each of the boxes on a form titled "Advisement and Waiver of Right to Counsel" and that he had signed the last page of the form.  The court admonished Johnson: "It is foolish to represent yourself. . . .  It's extremely foolish.  You have an excellent attorney here.  You know your attorney.  Do you understand that it is foolish to represent yourself?"  Johnson replied, "Yes."  The court warned Johnson about the "many dangers and disadvantages" of self-representation, including that Johnson was "too involved" in his case "to make the right decisions," that he did not have "legal training or experience," and that he would "be opposed by . . . an experienced prosecutor."  The court informed Johnson that he would not get "any special treatment" from the court and that he would be "required to follow [the] same rules as an attorney."  Johnson stated he understood all of the court's admonitions.  The court asked, "Knowing everything I've just told you, do you still wish to represent yourself?"  Johnson said, "Yes."  The court found Johnson made a "knowing, express, understandingly, intelligent waiver of his right to counsel," relieved his counsel, and ordered her to remain as standby counsel.

Over the next 16 months, the court granted Johnson multiple continuances, as well as many requests for assistance, including for funds to hire an investigator (to assist Johnson in obtaining his prison, hospital, and juvenile hall records and in serving subpoenas) and medical experts (to review the records he received).  In July 2024 Johnson informed the court that he had difficulty obtaining his Department of Corrections and

4

Rehabilitation case or central file (commonly known as a C-file),[2] and the court (with Johnson's consent) appointed his standby counsel to represent him solely for the purpose of obtaining that file. Approximately two weeks later, the court received the file, gave it to Johnson's investigator to make copies for the parties, relieved counsel for Johnson, and ordered her to remain as standby counsel.

On October 31, 2024 the court stated that Johnson had received all of the discovery he requested and that sentencing would be December 5, 2024, with "no further continuances." On November 19, 2024 the court reset the sentencing hearing for December 19, 2024.

C. *Johnson Seeks To Revoke His Waiver of His Right to Counsel and Requests Reappointment of Counsel; The Trial Court Denies Johnson's Request and Resentences Him*

At the December 19, 2024 resentencing hearing Johnson informed the court that he was not ready for sentencing because he wanted to file "a motion for [his] experts." The court told Johnson that it had "previously warned" him that the court would proceed with resentencing "today." Johnson stated neither of his two experts was "able to come to court today." The court explained it would review the reports of both experts, and the prosecutor said he did not object to the court receiving the two reports into evidence. The court stated that it had received

---

[2]     A C-file "'is the central depository for copies of all documents, correspondence, and reports pertaining to each inmate.'" (*Lunsted v. Superior Court* (2024) 100 Cal.App.5th 138, 144, fn. 1.)

5

Johnson's 22-page motion for resentencing and that Johnson had not filed a motion under section 1050 to continue the hearing. The court told Johnson, "The proceedings today will move forward on the changes in the law since you were sentenced previously in this case . . . on January 14, 2021." Johnson asked the court to continue the hearing for 10 days "for an opposition." The court denied Johnson's request, stating it did not find "good cause to continue at this juncture." The court summarized the lengthy procedural history of the resentencing proceedings and stated it had appointed "a host of experts" and an investigator to assist Johnson.

When the court asked Johnson if he waived formal arraignment for judgment and time for sentencing, Johnson stated, "I would like to give up my status and let [standby counsel] Ms. Chang take over the case. And I would like Ms. Chang to take over the case because I'm not going to have a fair hearing with you . . . . I will give up my status and let Ms. Chang take over the case today and prepare for the motion." The court asked Chang (who was appearing remotely) what time she could be in court, and she said she could be in court that afternoon, but explained she would need "a few days" to prepare because she had not received a copy of Johnson's motion for resentencing and one of the expert reports was "really, really thick." The court stated, "I don't have a few days. At this time, the request to withdraw his pro per status is denied as untimely." The court explained that it had made clear to Johnson that it would proceed with the resentencing hearing on that day, that the People agreed the court could admit the reports of the two experts, and that Johnson had not filed a motion to continue the hearing under section 1050. Johnson said he needed his

6

experts "to testify and certify everything that is on the report for the sentencing hearing."

The court reviewed the reports of Johnson's two experts and admitted the reports into evidence. The court also summarized Johnson's convictions and the changes in the sentencing laws since his original sentencing. When the court asked Johnson if there were any other materials he wanted the court to consider, Johnson stated, "I have requested to give up my status to Ms. Chang, based on I don't have any evidence, because I wasn't given the opportunity to bring my experts in." The court said that it had not "foreclosed" Johnson from calling witnesses, that Johnson chose "not to have them present here in court today," and that the court had admitted the reports of his experts. The court stated: "The court believes at this juncture, Mr. Johnson, that you are merely playing games with this court. The court has continued this sentencing on numerous prior occasions. The court actually had to take the unusual step of trying to step in so that you could get all the records that you needed back in July, those that should have been subpoenaed long prior to this sentencing hearing today. . . . The court finds that the court has made great efforts to get you prepared on this case. You knew today, and today you don't have your witnesses here. We are moving forward today." After Johnson attempted to explain why one of his experts could not be in court, the court stated, "I'm certainly letting you argue any of the underlying information in either [expert's] report. Those are being introduced into evidence at this time. The fact that the witnesses are not available or are not here in court, I have no information regarding that, other than your self-serving statement. They should have been subpoenaed here in court."

Citing the experts' reports, the court found Johnson "suffered from childhood trauma," "post-traumatic stress disorder," and "mental health issues arising out of [the trauma]." Nevertheless, the court found that imposing the lower term under section 1170 or striking the firearm enhancement under section 1385 "would be contrary to the interest of justice." On Johnson's conviction for attempted robbery, the court imposed the middle term of two years, doubled under the three strikes law, plus 10 years for a firearm enhancement under section 12022.53, subdivision (b), one year for a weapon enhancement under section 12022, subdivision (b)(1), and five years for a prior serious felony conviction under section 667, subdivision (a)(1); on his conviction for making a criminal threat, the court imposed a term of one year four months; and on his conviction for possession of a firearm by a felon, the court imposed a term of one year four months, for an aggregate prison sentence of 22 years eight months. The court imposed but stayed under section 654 execution of sentences on Johnson's convictions for assault with a deadly weapon, assault with a firearm, possession of ammunition by a felon, and possession of a short-barreled rifle or shotgun. Johnson timely appealed.

## DISCUSSION

A.    *Applicable Law and Standard of Review*

"When a criminal defendant who has waived his right to counsel and elected to represent himself under *Faretta* seeks . . . to revoke that waiver and have counsel appointed, the trial court must exercise its discretion under the totality of the circumstances." (*People v. Lawrence* (2009) 46 Cal.4th 186, 188

8

(*Lawrence*); see *People v. Gallego* (1990) 52 Cal.3d 115, 163-164 (*Gallego*); *People v. Gonzalez* (2012) 210 Cal.App.4th 724, 743 (*Gonzalez*).)  The court should consider, "along with any other relevant circumstances, '(1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.'" (*Lawrence*, at p. 192; see *Gallego*, at p. 164; *Gonzalez*, at p. 743.)  "'"While the consideration of these criteria . . . is obviously relevant and helpful to a trial court in resolving the issue, they are not absolutes, and in the final analysis it is the totality of the facts and circumstances which the trial court must consider in exercising its discretion as to whether or not to permit a defendant to again change his mind regarding representation in midtrial."'" (*Lawrence*, at p. 192; accord, *Gallego*, at p. 164; see *Gonzalez*, at p. 743 ["The trial court need not review on the record each factor."].)  "A trial court's denial of a *Faretta* revocation request is reviewed for abuse of discretion." (*People v. Frederickson* (2020) 8 Cal.5th 963, 1006; see *People v. Weber* (2013) 217 Cal.App.4th 1041, 1061.)

> B.    *The Trial Court Did Not Abuse Its Discretion in Denying Johnson's Last-minute Request To Revoke His Waiver of His Right to Counsel*

The trial court did not abuse its discretion in denying Johnson's request to revoke his waiver of his right to counsel.

9

First, Johnson's prior history of substituting counsel weighed against granting his request. At the original sentencing hearing, after the court denied his request to replace his appointed counsel, Johnson invoked his right to represent himself. On remand, Johnson initially accepted representation by counsel, but after six months he again exercised his right to represent himself. He confirmed on two subsequent occasions, in response to the court's inquiries, he still wanted to represent himself. Johnson made it abundantly clear, throughout (almost) the entire resentencing proceedings, he did not want counsel to represent him. He did not change his mind until the court denied his most recent request for another continuance. After successfully arguing in *Johnson I* the trial court denied him his right to represent himself at sentencing, he represented himself for many months, and at the last minute told the court he wanted what he said in *Johnson I* he did not want: to be represented by counsel. Johnson's alternating invocations and revocations of his right to represent himself supported the court's ruling. (See *People v. Lawley* (2002) 27 Cal.4th 102, 150 (*Lawley*) [defendant's history of substituting counsel supported the trial court's order denying his request for representation by counsel].)

Second, Johnson did not give a "compelling" (*Lawrence, supra,* 46 Cal.4th at pp. 195-196) reason for his request. The record supports the trial court's conclusion Johnson asked the court to appoint counsel to represent him, not because he sincerely needed the assistance of counsel, but to delay the proceedings. Johnson asked to revoke his waiver of his right to counsel immediately after the court denied his request for yet another continuance. As the trial court found, Johnson was "playing games" by failing to subpoena his experts and then

claiming he needed a continuance to get his experts to come to court. In addition, neither of Johnson's two reasons for no longer wanting to represent himself—that he did not believe the court would give him "a fair hearing" and that he "wasn't given the opportunity to bring [his] experts in"—was valid. There was no indication that the trial court would not be fair to Johnson (or that the court would be fairer to an attorney). Nor was there any evidence the court precluded Johnson from having his experts come to the resentencing hearing. And because Johnson did not subpoena his experts for the sentencing hearing, standby counsel could not have secured their presence at the last minute. If Johnson genuinely decided he needed counsel to represent him, he would have asked the court to appoint counsel at the beginning of the sentencing hearing, when he already knew his experts would not be in court to testify that day. (See *Lawrence*, at p. 195 ["Buyer's remorse" is not a "compelling" reason "for wanting to revoke a *Faretta* waiver."]; cf. *People v. Elliott* (1977) 70 Cal.App.3d 984, 997 [defendant's reason for his request for counsel, that the People announced their intention to present evidence on an uncharged offense, "was a valid one"].)

Third, Johnson asked the court to revoke his waiver of his right to counsel at the last possible minute, just as the court was about to pronounce his sentence. The court had already granted Johnson several continuances, assisted him in obtaining his prison, hospital, and juvenile hall records, approved funds for him to hire an investigator and medical experts, and scheduled numerous progress hearings to address any issues or problems Johnson may have experienced and to remind him of upcoming court dates. All told, the court and the People waited approximately 22 months after this court issued its remittitur in

11

February 2023 while Johnson prepared for his resentencing hearing. Johnson's calculated delay in making his request weighed against granting it. (See *Gallego*, *supra*, 52 Cal.3d at p. 164 [trial court did not abuse its discretion in denying the defendant's midtrial request for appointment of counsel, where the request "came late in the guilt phase trial, after a substantial part of the prosecution case had been presented, and after [he] had a chance to perceive that things were not proceeding as smoothly as he had envisioned"].)

Fourth, Johnson had been, and appeared likely to continue to be, an effective advocate for himself. He filed a 22-page motion for resentencing that discussed the ameliorative legislation that applied to his resentencing. Among other things, Johnson asked the court to strike his serious felony enhancement under Senate Bill Nos. 1393 and 81; to strike the firearm enhancement under Senate Bill No. 620; and to resentence him to the lower term under Senate Bill No. 567 based on evidence he "experienced psychological[,] physical, or childhood trauma, including, but not limited to abuse[,] neglect, exploitation, or sexual violence."[3]

---

[3]    Senate Bill No. 1393 (2017-2018 Reg. Sess.) amended sections 667, subdivision (a), and 1385, subdivision (b), to allow a trial court "to dismiss a serious felony enhancement in furtherance of justice." (*People v. Stamps* (2020) 9 Cal.5th 685, 693; see *People v. Garcia* (2018) 28 Cal.App.5th 961, 965.) Senate Bill No. 81 (2021-2022 Reg. Sess.) "amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Senate Bill No. 620 (2017-2018 Reg. Sess.) amended section 12022.53, subdivision (h), to provide that "'a court may, in the interest of justice pursuant to [s]ection 1385 and at the time

Johnson also argued the prohibition on "multiple punishment" under section 654 applied because three of his convictions "shared a common intent and objective." Johnson's ability to present favorable evidence (when he chose to) and make appropriate arguments for a reduced sentence weighed against the court granting his request for counsel. (See *Lawley*, *supra*, 27 Cal.4th at p. 150 ["the quality of [the defendant's] self-representation did not compel the granting of his motion" for appointment of counsel because he demonstrated he could "successfully" carry out the tasks in a trial]; *Gallego*, *supra*, 52 Cal.3d at p. 164 [when seeking appointment of counsel, the defendant "exhibited considerable knowledge of both trial tactics and trial procedure," and "the court could have legitimately discounted [his] protestations, and concluded his future effectiveness would not be impaired"].)

The only factor that weighed marginally in favor of granting Johnson's request to give up his right to represent himself and again become represented by an attorney was that the request "did not pose any risk of substantial delay to the proceedings." Chang stated she needed only a few days to prepare for the hearing. The court, however, did not abuse its discretion in considering the relatively short delay in the context

---

of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section.'" (*People v. Tirado* (2022) 12 Cal.5th 688, 696.) And Senate Bill No. 567 (2021-2022 Reg. Sess.) created "a presumption that the sentencing court 'shall' enter a lower term sentence when, among other things, a 'psychological, physical, or childhood trauma' contributed to the offense." (*People v. Salazar* (2023) 15 Cal.5th 416, 419; see § 1170, subd. (b)(6).)

13

of the 22-month delay the court had already allowed. And, as the Supreme Court made clear in *Lawrence*, *supra*, 46 Cal.4th 186, no one factor "is necessarily determinative." (*Id.* at p. 196.) Rather, the standard "is whether the court's decision was an abuse of its discretion under the totality of the circumstances." (*Ibid*.) The trial court did not abuse its discretion in denying Johnson's request under the circumstances here, which included Johnson's history of substituting counsel, the absence of a compelling reason for the request, the timing of the request, and Johnson's ability to continue to represent himself effectively. (See *Lawley*, *supra*, 27 Cal.4th at pp. 149-151 [trial court did not abuse its discretion in denying the defendant's request to "relinquish responsibility for his own defense and obtain the appointment of counsel to represent him," where the "timing of the request" suggested "an attempt to delay the trial," appointing counsel "would have necessitated substantial delay," the evidence suggested the defendant had a "proclivity to substitute counsel," and the defendant demonstrated he could present evidence in his defense]; *Gonzalez*, *supra*, 210 Cal.App.4th at p. 743 [trial court did not abuse its discretion in denying the defendant's request the court reappoint counsel, where the defendant made the request the day after the court denied his request for a continuance and the victim's family was present at the sentencing hearing].)

Johnson asserts he had a "very good reason for requesting re-appointment of counsel," namely, that he made his request "[s]hortly" after standby counsel obtained his prison records and that counsel "could have helped [him] in presenting mitigation, and put forth arguments to justify striking the prior strike conviction." The record does not support this assertion. Johnson

received his file from the Department in August 2024, but he did not ask the court to appoint counsel until four months and several hearings later.  As for needing the assistance of counsel to ask the court to strike his prior serious or violent felony conviction, Johnson did not mention this in the trial court.  In any event, we do not compare Johnson's abilities and capabilities with those of an attorney.  As the Supreme Court stated in *Lawrence*, *supra*, 46 Cal.4th 186:  "That defendant's defense would have been more effectively presented (or a better sentence obtained through a negotiated plea) had he been represented is likely.  But if that fact were determinative, virtually all self-representing defendants would have the right to revoke their counsel waivers at any time during trial.  That is not the law." (*Id.* at p. 196.)

Johnson argues in his reply brief that, unlike the defendant's situation in *Lawrence*, *supra*, 46 Cal.4th 186, "there were no legitimate concerns that [his] withdrawal of his right of self-representation would have impaired the administration of justice."  The record does not support Johnson's argument.  In addition to granting multiple requests by Johnson to continue the sentencing hearing, as well as approving resources to assist Johnson in preparing for resentencing, the court sought to ensure Johnson had, in the court's words, "whatever tools he has in the tool chest . . . to argue why he might be entitled to a lower sentence in this case."  In July 2024 (approximately five months before the resentencing hearing), Johnson stated he was "not ready to be resentenced" and confirmed the "only thing" "outstanding" was his file from the Department (which, the prosecutor observed, Johnson did not request until 15 months after this court issued its remittitur).  The trial court said the

15

"gamesmanship on the part of" Johnson included waiting "a significant amount of time" before requesting his file from the Department and not filing a motion to continue when he knew the court and the People "would prepare" for the resentencing hearing.  And yet, the court again continued the hearing (and did so several times more).  The court did not abuse its discretion in denying Johnson's request for counsel that would have caused further delay to the already protracted resentencing proceedings.

## DISPOSITION

The judgment is affirmed.


SEGAL, Acting P. J.

We concur:



FEUER, J.



STONE, J.